UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

UNITED STATES OF AMERICA;
STATE OF INDIANA;
ex rel. CATHY OWSLEY,

                              Relators,

 - against -

FAZZI ASSOCIATES, INC.;
CARE CONNECTION OF CINCINNATI;
GEM CITY HOME CARE;
ASCENSION HEALTH CARE CORP.;
ENVISION HEALTHCARE HOLDINGS, INC.,

                              Defendants.

Case No. 1:15-cv-511

Judge Timothy S. Black

## MOTION AND MEMORANDUM OF LAW IN SUPPORT OF ENVISION HEALTHCARE, INC., GEM CITY HOME CARE, CARE CONNECTION OF CINCINNATI, AND ASCENSION HEALTH'S MOTION TO DISMISS RELATOR'S AMENDED COMPLAINT

Defendants Envision Healthcare Corporation, Care Connection of Cincinnati, Gem City Home Care, and Ascension Health ("Defendants"), by and through their undersigned counsel, respectfully submit this motion to dismiss Relator Cathy Owsley's Amended Complaint with prejudice. As set forth more fully in the attached memorandum in support of this motion, the Amended Complaint should be dismissed for failure to state a claim upon which relief can be granted as required by Federal Rule of Civil Procedure 12(b)(6), and for failure to plead fraud with the specificity required by Federal Rules of Civil Procedure 9(b). Accordingly, Defendants respectfully requests that this Court dismiss all of Relator's claims against the Defendants.

Respectfully submitted,

/s/ Allison L. Goico

Allison L. Goico, Esq. (OH 0088777)
Jason W. Hilliard (0082688)
DINSMORE & SHOHL LLP
255 East Fifth Street, Suite 1900
Cincinnati, Ohio 45202
Phone: (513) 977-8426
Fax: (513) 977-8141
*allison.goico@dinsmore.com*
*jason.hilliard@dinsmore.com*

/s/ George B. Breen

George B. Breen (*application for admission pro hac vice forthcoming*)
Erica F. Sibley (*application for admission pro hac vice forthcoming*)
Epstein Becker & Green, P.C.
1227 25th St NW, Suite 700
Washington, D.C. 20037
Tel: (202) 861-0900
Fax: (202) 861-3523
*gbreen@ebglaw.com*
*esibley@ebglaw.com*

*Attorneys for Defendants Envision Healthcare, Care Connection of Cincinnati, Gem City Home Care, and Ascension Health*

## **Table of Contents**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ..................................................................................................... 2

ARGUMENT ....................................................................................................................... 3

I.  Relator's Amended Complaint Fails to Plead Plausible Claims For Relief Under Rule 12(b)(6)................................................................................................................. 3

II. The Amended Complaint Should Be Dismissed for Failure to Adequately Plead the Elements of an FCA Claim. ...................................................................................... 6

    A.  The Amended Complaint Does Not Plead with Requisite Particularity That Defendants Knowingly Submitted, or That The Government Actually Paid, Any False Claims....................................................................................... 6

    B.  Relator Fails to Adequately Plead That Any Allegedly False Statements Were Material To The Government's Payment Of The Claims. ......................... 11

    C.  Relator Fails to Plead a Cognizable False Claims Act Violation Related to Star Ratings. ................................................................................................. 12

    D.  Relator Fails to Adequately Plead a False Claims Act Violation Related to Her Allegations of Improperly Provided Physical Therapy Services. ................. 14

III. Relator Fails to Adequately Plead a Reverse False Claims Action. ................................ 15

IV. Count III Fails to Adequately Plead A Conspiracy Among the Defendants ................... 16

V.  Relator's Indiana State False Claims Act Claims Are Held to the Same Heightened Pleading Standard As Claims Under the Federal False Claims Act and Also Fail to Plead Fraud With Particularity or Plausibility. ............................................. 17

VI. Ascension Should Be Dismissed From This Action With Prejudice............................... 18

CONCLUSION.................................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
   556 U.S. 663 (2009)............................................................................4, 5

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)............................................................................ *passim*

*Chesbrough v. VPA P.C.,*
   655 F.3d 461 (6th Cir. 2011) ........................................................3, 8, 9, 14

*Dials v. Watts Bros. Moving & Storage Sys.,*
   2003 U.S. Dist. LEXIS 21413 (S.D. Ohio Nov. 24, 2003) ...................19

*United States ex rel. Bledsoe v. Cmty. Health Sys.,*
   501 F.3d 493, 509 (6th Cir. 2007) ........................................................7

*United States ex rel. Herron v. Indianapolis Neurosurgical Grp., Inc.,*
   2013 U.S. Dist. LEXIS 23610 (S.D. Ind. Feb. 21, 2013) ....................17

*United States ex rel. Hirt v. Walgreen Co.,*
   2016 U.S. Dist. LEXIS 46807 (M.D. Tenn. Apr. 4, 2016)....................8

*United States ex rel. Hirt v. Walgreen Co.,*
   846 F.3d 879 (6th Cir. 2017) .............................................................7, 10

*United States ex rel. Hockenberry v. OhioHealth Corp.,*
   2016 U.S. Dist. LEXIS 113980 (S.D. Ohio Aug. 25, 2016) ...............5

*United States ex rel. Hockenberry v. OhioHealth Corp.,*
   2017 U.S. App. LEXIS 19339 (6th Cir. 2017) ....................................8

*United States. ex rel. Howard v. Lockheed Martin Corp.,*
   499 F. Supp. 2d 972 (S.D. Ohio 2007) ................................................7

*United States ex rel. Ibanez v. Bristol-Myers Squibb Co.,*
   2015 U.S. Dist. LEXIS 39394 (S.D. Ohio Mar. 27, 2015)...................15

*United States ex rel. Ibanez v. Bristol-Myers Squibb Co.,*
   874 F.3d 905 (6th Cir. 2017) .......................................................... *passim*

*United States ex rel. Kustom Prods. v. Hupp & Assoc.,*
   2017 U.S. Dist LEXIS 72814 (S.D. Oh. May 12, 2017) .....................4

*Nader v. Blackwell*,
    545 F.3d 459 (6th Cir. 2008) ..................................................................................13

*United States ex rel. Prather v. Brookdale Senior Living Cmtys., Inc.*,
    838 F.3d 750 (6th Cir. 2016) ................................................................7, 8, 9, 10

*United States ex rel. Prather v. Brookdale Senior Living Cmtys., Inc.*,
    892 F.3d 822 (6th Cir. 2018) ..........................................................................11, 12

*United States ex rel. Prather v. Brookdale Senior Living Cmtys., Inc.*,
    2015 U.S. Dist. LEXIS 150468 (M.D. Tenn. Nov. 5, 2015) (*rev'd on other
    grounds*) ............................................................................................................14

*United States ex rel. SNAPP, Inc. v. Ford Motor Co.*,
    532 F.3d 496 (6th Cir. 2008) ...................................................................................7

*United States ex rel. SNAPP, Inc. v. Ford Motor Co.*,
    618 F.3d 505, 509 (6th Cir. 2010) ...........................................................................7

*Sanderson v. HCA—The Healthcare Co.*,
    447 F.3d 873 (6th Cir. 2006) ...................................................................................8

*United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*,
    *290 F.3d 1301, 1311* (11th Cir. 2002) ....................................................................8

*United States ex rel. Atkins v. McInteer*,
    470 F.3d 1350 (11th Cir. 2006) ...............................................................................8

*United States ex rel. Sheldon v. Kettering Health Network*,
    2015 U.S. Dist. LEXIS 803 (S.D. Oh. January 6, 2015), *aff'd* 816 F.3d 399
    (6th Cir. 2016)...................................................................................................3, 4

*United States ex rel. Sheldon v. Kettering Health Network*,
    816 F.3d 399 (6th Cir. 2016) ........................................................................ *passim*

*United States v. Marlar*,
    525 F.3d 439 (6th Cir. 2008) ...................................................................................7

*United States v. Sleep Ctrs. Fort Wayne, LLC*,
    2016 U.S. Dist. LEXIS 46257 (N.D. Ind. Apr. 6, 2016) ........................................17

*Universal Health Svcs. v. United States ex rel. Escobar*,
    136 S. Ct. 1989 (2016)............................................................................................11

*Wysocki v. Int'l Bus. Mach. Corp.*,
    607 F.3d 1102 (6th Cir. 2010) ...............................................................................18

*Yuhasz v. Brush Wellman, Inc.*,
    341 F.3d 559 (6th Cir. 2003) ..................................................................7

**Statutes**

Federal False Claims Act, 31 U.S.C. § 3729 *et seq.* ............................................ *passim*

31 U.S.C. § 2720 .................................................................................................3

Indiana Medicaid False Claims and Whistleblower Protection Act, I.C. 5-11-5.7 *et seq.* .........................................................................................................1, 16

**Other Authorities**

Fed. Rule Civ. Proc. 8(a)(2) ...............................................................................4

Fed. R. Civ. P. 9(b) ...............................................................................7, 8, 10, 17

Fed. R. Civ. P. 12(b)(6)................................................................................3, 7, 16, 19

Fed. R. Civ. P. 12(d) ........................................................................................18

Fed. R. Civ P. 56 .............................................................................................18

CMS, "Home Health Star Ratings",
    https://www.cms.gov/Medicare/Quality-Initiatives-Patient-Assessment-
    Instruments/HomeHealthQualityInits/HHQIHomeHealthStarRatings.html .........................12

## PRELIMINARY STATEMENT

In her Amended Complaint,[1] Relator Cathy Owsley ("Relator" ) attempts to show that Defendants Envision Healthcare ("Envision"), Gem City Home Care ("Gem City"), Care Connection of Cincinnati ("CCC") and Ascension Health ("Ascension") (together with Envision, CCC, and Gem City, the "Defendants") engaged in violations of the Federal False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, and the Indiana Medicaid False Claims and Whistleblower Protection Act (the "Indiana FCA"), 5-11-5.7 *et seq*. However, Relator make purely conclusory and suppositional allegations that fail to identify a single false claim submitted by Defendants to a government payor. Relator fills the pages of her Amended Complaint with allegations that lack factual substance; instead relying on statements about purportedly fraudulent activity and wholly unsupported claims of a conspiracy among Defendants and coding vendor, Defendant Fazzi Associates, Inc. ("Fazzi"), to inflate the severity of diagnoses of the Defendants' home health patients in order to increase government payor reimbursement for home health care services.

Relator's speculative pleadings belie that she does not have knowledge of any false claim, much less one that was submitted to, or reimbursed by, a government payor. Her allegations altogether fail to establish scienter, causation, an actual false claim, and materiality—each of which is an independent prerequisite to an FCA cause of action.  Even after taking the opportunity of a second chance to plead a case against Defendants by filing an Amended Complaint almost two full years after her original complaint, Relator is unable to rectify her fatally flawed allegations. The allegations remain conclusory and suppositional, based solely on the bare speculation that Relator's personal disagreements with Fazzi must be proof of fraud or false claims. As detailed herein, the Amended Complaint should be dismissed in its entirety

---

[1] Although Relator's Amended Complaint is not available on the public docket, counsel for Relator provided Defendants with the Amended Complaint on July 10, 2018, and it is the document to which the Defendants respond herein.

because Relator plainly fails to plausibly plead her FCA and Indiana FCA fraud claims, nor does she plead them with requisite particularity.

## STATEMENT OF FACTS

As alleged by Relator, Envision is a national healthcare corporation. Amended Complaint at ¶ 10.  Evolution Health, a division of Envision, provides healthcare services specializing in post-acute care management of patients with advanced illnesses and chronic disease. *Id*. Relator alleges that Ascension, in partnership with Envision and Evolution, provides home health care services. *Id*. at ¶ 11. Care Connection of Cincinnati ("CCC"), located in Cincinnati, Ohio, and Gem City Home Care ("Gem City"), based in Dayton, Ohio, are home health agency affiliates of Envision. *Id*. at ¶¶ 8-9. Defendant Fazzi Associates, Inc. ("Fazzi") provides coding services at CCC, Gem City, and other of Envision's home health agency locations. *Id*. at ¶¶ 7, 10. As alleged by Relator, Fazzi began providing coding services to Defendants in December 2014. *Id*. at ¶ 34.

Relator is a licensed registered nurse who has worked as a Quality Assurance Nurse at just one of Envision's affiliated home health locations, Care Connection of Cincinnati, since 2006. *Id*. at ¶ 6. In her role as a Quality Assurance Nurse, Relator reviews patient assessment forms and Plans of Care that are initiated by a clinician and must be signed by a physician. *Id*. Importantly, Relator does not allege that she works in the billing department of CCC or any Envision agency, nor does she allege that she handles the CCC's bills or reimbursement from Medicare in any way.

Less than a year after Fazzi began performing coding services for CCC and Gem City, Relator filed her *qui tam* complaint on August 4, 2015. Relator subsequently filed an Amended Complaint on March 7, 2017, in which she alleges that Envision violated both the federal FCA (Amended Complaint, ¶¶ 71-84) and the Indiana FCA (Amended Complaint ¶¶ 85-90) by

2

overbilling Medicare and Indiana State Medicaid. Specifically, Relator alleges that, from December 2014 through the date of the Amended Complaint, Envision, CCC, Gem City, and Ascension, in conjunction with Defendant Fazzi, purportedly conspired to systematically defraud the United States and the State of Indiana by "alter[ing] or falsif[ying] patient assessments to inflate Outcome and Assessment Information Set ("OASIS") scores in order to quality for higher reimbursement amounts" from Medicare and Medicaid. Amended Complaint at ¶ 1-2. Relator alleges that the Defendants' "falsified" OASIS scores led to higher Star Ratings, a quality measure by which the Centers for Medicare and Medicaid Services ("CMS") categorize home health agencies. *Id.* at ¶¶ 46-62. Relator further alleges that she "believes" that CCC allows a non-clinically licensed patient scheduler to perform therapy services, or that CCC is not providing such therapy services at all. *Id.* at ¶¶ 63-65.

Both the original Complaint and the Amended Complaint were filed under seal pursuant to 31 U.S.C. § 2720. The United States declined to intervene in this action on April 6, 2018, and the complaints were unsealed on April 11, 2018. Envision, CCC and Gem City waived service of the Amended Complaint on July 10, 2018. Ascension accepted service on July 10, 2018. This motion to dismiss Relator's complaints follows.

## ARGUMENT

I. **Relator's Amended Complaint Fails to Plead Plausible Claims For Relief Under Rule 12(b)(6).**

Relator fails to state a plausible claim for relief with respect to several of the Amended Complaint's allegations. To survive a Rule 12(b)(6) motion to dismiss pleadings, Relator is obligated to "provide the 'grounds' of her 'entitle[ment] to relief'", which "requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, a complaint must "contain

3

sufficient factual matter accepted as true, to 'state a claim to relief that is plausible on its face.'" *Chesbrough v. VPA P.C.*, 655 F.3d 461, 467 (6th Cir. 2011); *U.S. ex rel. Sheldon v. Kettering Health Network*, 2015 U.S. Dist. LEXIS 803 *3 (S.D. Oh. January 6, 2015), *aff'd* 816 F.3d 399 (6th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 663, 678 (2009)). A claim is plausible where "Relator pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Kettering*, U.S. Dist. LEXIS 803 at *3, quoting *Iqbal*, 556 U.S. at 678. However, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" and the case shall be dismissed. *Id.* (citing Fed. Rule Civ. Proc. 8(a)(2)).

In other words, a Relator must plead facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, "[t]he plausibility standard is not akin to a 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* The factual allegations set forth in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557).

The plausibility standard enunciated in *Iqbal* and *Twombly* is applicable in the whistleblower context. *See, e.g.*, *Kettering*, U.S. Dist. LEXIS 803; *United States ex rel. Kustom Prods. v. Hupp & Assoc.*, 2017 U.S. Dist. LEXIS 72814 (S.D. Oh. May 12, 2017) (dismissing

4

Relator's FCA claims). *Iqbal* articulates the two-step approach to guide courts in applying the plausibility standard:

> [1] [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.
> [2] When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. at 679. Accordingly, under *Iqbal* the court will first strip the conclusory statements and allegations from the complaint and then, second, assess the residual contents to determine whether the Relator is "plausibly" entitled to relief. For a claim to be "plausible," it is insufficient that the facts alleged are "'consistent with' a defendant's liability," or that a violation is "conceivable." *Iqbal*, 556 U.S. at 678, 680 (quoting *Twombly*, 550 U.S. at 557, 570). The mere "*possibility*" of a violation is not enough. *Id.* at 678 (emphasis added). In deciding a motion to dismiss "a court 'need not accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Twombly*, 550 U.S. at 556. It is insufficient for Relator to make a "recitation of facts intimating the 'mere possibility of misconduct.'" *United States ex rel. Hockenberry v. OhioHealth Corp.*, 2016 U.S. Dist. LEXIS 113980, at *8 (S.D. Ohio Aug. 25, 2016).

Relator's FCA allegations are largely a collection of conclusory statements that "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Even as generously construed, the Amended Complaint's broad and sweeping allegations merely indicate that Defendants' conduct *could possibly* have resulted in improper coding, leading *possibly* to the submission and payment of false claims. However, Relator's pleading fails to connect Fazzi's supposed improper coding of an OASIS form to the submission and subsequent reimbursement of a false claim, which is essential to withstand the test of plausibility of her claims. Indeed, the substance of Relator's

5

allegations amount to a declaration of her disagreement with Fazzi's coding practices, which does not equate to plausible liability on the part of Defendants without factual support that such coding was actually knowingly false, and that the falsely coded claims were submitted to the government for reimbursement.

While Relator mentions in passing in the Amended Complaint the sweeping claim that the allegedly fraudulent activity is "nationwide" (Amended Complaint at ¶¶ 66, 69), her complaint makes plain that Relator has only ever worked at CCC; she does not have knowledge of any location other than CCC. *Id*. at ¶ 6. Moreover, her responsibilities are as a *QA nurse* which involve reviewing OASIS forms and completing Plans of Care (*Id*. at ¶ 34); she does not allege, because she cannot, that she has anything to do with the submission of claims, nor does she allege that she has personal knowledge of activities taking place at any other Envision or Ascension entity other than CCC. *Id*. There are only scattered references to any of the other Defendant entities throughout the Amended Complaint. Indeed, she does not include one single factual allegation of the submission of a false claim related to Defendant Ascension. The scarce factual statements she offers relate to her personal experiences at CCC alone. Accordingly, Relator's Amended Complaint should be dismissed.

## II.     The Amended Complaint Should Be Dismissed for Failure to Adequately Plead the Elements of an FCA Claim.

### A.     The Amended Complaint Does Not Plead with Requisite Particularity That Defendants Knowingly Submitted, or That The Government Actually Paid, Any False Claims

The FCA imposes civil liability on any person who "knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval," and any person who "knowingly makes, uses, or causes to be

made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. §

3729(A)(1)(A-B). To establish liability pursuant to Section 3729(a), a relator must at least allege:

> [1] that the defendant [made] a false statement or create[d] a false record
> [2] with actual knowledge, deliberate ignorance, or reckless disregard of
> the truth or falsity of the information; [3] that the defendant . . . submitted
> a claim for payment to the federal government; . . . and [4] that the false
> statement or record [was] material to the Government's decision to make
> the payment sought in the defendant's claim.

*United States ex rel. Sheldon v. Kettering Health Network*, 816 F.3d 399, 408 (6th Cir. 2016)

(quoting *United States ex rel. SNAPP, Inc. v. Ford Motor Co*., 618 F.3d 505, 509 (6th Cir.

2010)).

FCA claims are subject to Federal Rule of Civil Procedure 9(b)'s requirement to plead

fraud with particularity. *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003). This

standard is a "stringent" one. *United States ex rel. Prather v. Brookdale Senior Living Cmtys.,*

*Inc*., 838 F.3d 750, 768 ("Prather I"). Rule 9(b) "demands specifics"—it is not enough for a

pleading to allege mere "inferences and implications." *United States ex rel. Hirt v. Walgreen*

*Co.*, 846 F.3d 879, 881 (6th Cir. 2017). At a minimum, a Relator must plead "the time, place, and

content of the alleged misrepresentation...; the fraudulent scheme; the fraudulent intent of the

defendants; and the injury resulting from the fraud." *United States v. Marlar*, 525 F.3d 439, 444

(6th Cir. 2008).

Where a complaint alleges "a complex and far-reaching fraudulent scheme," then the

complaint must "provide[] examples of specific" fraudulent conduct that are "representative

samples" of the scheme. *Marlar*, 525 F.3d at 444-45 (quoting *United States ex rel. Bledsoe v.*

*Cmty. Health Sys*., 501 F.3d 493, 509 (6th Cir. 2007)) (an action under subsection (a)(1) of the

FCA "requires proof that the alleged false or fraudulent claim was presented to the

government."). Failure to identify specific fraudulent claims requires dismissal of a complaint.

*United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496 (6th Cir. 2008); *see also United States. ex rel. Howard v. Lockheed Martin Corp*., 499 F. Supp. 2d 972, 976 (S.D. Ohio 2007) ("[L]ack of compliance with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6).").

Accordingly, the identification of specific representative false claims that a defendant has submitted to the government is "an indispensable element" of a complaint that alleges a FCA violation. *Bledsoe*, 501 F.3d at 504-5 (affirming dismissal of complaint and declining to apply any "relaxed" standard of pleading with particularity when Relator insufficiently identified particular false claims; see also *Kettering*, 816 F.3d at 411 ("In [the Sixth] Circuit, there is a 'clear and unequivocal requirement that a relator allege specific false claims,'" as liability is attached to the claim for payment). Adequately-plead representative claims must provide more detail than simply a general description of the claim. *See Chesbrough.*, 655 F.3d at 470 (finding representative claims insufficient to support a FCA violation when "the relator failed to identify with particularity any billings or cost reports that were actually submitted to the government, or any dates on which bills were submitted"); see also *United States ex rel. Hirt v. Walgreen Co.*, 2016 U.S. Dist. LEXIS 46807, at *10-11 (M.D. Tenn. Apr. 4, 2016) (finding that, lacking "specific dates on which claims were submitted and naming specific prescribing physicians," a relator's representative claims were insufficiently plead, even when "a range of dates during which the alleged fraud occurred" were provided).

In conjunction with identifying specific false claims, a relator must allege that a defendant "knowingly asks the Government to pay amounts it does not owe." *Prather I*, 838 F.3d at 768 (citing *Sanderson v. HCA—The Healthcare Co*., 447 F.3d 873, 877 (6th Cir. 2006)) ("[t]he False Claims Act does not create liability merely for a health care provider's disregard of

Government regulations or improper internal policies….”). Rule 9(b) “does not permit a False Claims Act Relator merely to describe a private scheme in detail but then to allege simply . . . that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government." *United States ex rel. Hockenberry v. OhioHealth Corp.,* 2017 U.S. App. LEXIS 19339, *6 (6th Cir. 2017) (quoting *United States ex rel. Clausen v. Lab. Corp. of Am., Inc*., 290 F.3d 1301, 1311 (11th Cir. 2002)); *see also Sanderson*, 447 F.3d at 877; *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1359 (11th Cir. 2006) (where a relator “summarily conclude[d] that the defendants submitted false claims to the government for reimbursement”, she “fail[ed] to provide the next link in the FCA liability chain”, and the complaint was dismissed).

The relator’s allegations must “describe[]” the “specific intervening conduct” between every step of the process forming the allegedly false claim. *United States ex rel. Ibanez v. Bristol-Myers Squibb Co*., 874 F.3d 905, 915 (6th Cir. 2017). Typically, a successful relator satisfies this threshold by alleging that she “work[s] in the defendants' billing departments”, or has first-hand knowledge that false claims were actually billed based on “discussions with employees directly responsible for submitting claims to the government.” *Prather I*, 838 F.3d at 769; *Kettering*, 816 F.3d at 413.

Relator’s allegations of FCA violations on behalf of Envision, CCC, Gem City, and Ascension fail for lack of particularity. Relator has not identified a single allegedly false claim. Relator does not allege specific dates of service nor billing dates for any claims. Nor does she attach as exhibits specific billing records or medical documentation to the complaint, as many relators do. *See, e.g*., *Chesbrough*, 655 F.3d at 465. At best, she provides generalized statements that do not include any showing that claims were billed, much less paid, or that the Relator has

any knowledge of that being done. What Relator does allege are instances where she saw Fazzi coders make a notation on an OASIS form or Plan of Care with which she did not agree. Amended Complaint at ¶¶ 38, 54. Above all, beyond her own conclusory determinations, Relator does not present factual allegations that this translated to claims billed to the government. This is a critical step—the full course of "specific intervening conduct" between Fazzi coding and billing—that is simply not present in Relator's allegations. These allegations are insufficient to form the basis of a claim of FCA violation on the part of the Defendants.

> ### i.  Relator Does Not Sufficiently Plead Personal Knowledge of the Billing of the Representative Claims.

The Sixth Circuit has recognized a very limited exception to the requirement of particularity that a relator must satisfy when that relator is not directly responsible for submitting claims to federal payors in order to pass the "demanding" test for particularity. *Ibanez*, 874 F.3d at 915; s*ee Prather I*. This so-called "relaxed" standard is applied to cases brought by relators with "personal knowledge" of the claim submission that was based either on "working in the defendants' billing departments, or on discussions with employees directly responsible for submitting claims to the government." *Prather I* at 769; *Kettering*, 816 F.3d at 413.  This approach has been considered by courts in this Circuit with caution and, indeed, with skepticism over the reach of its application in the Sixth Circuit. *See, e.g.*, *Ibanez*, 874 F.3d at 915; *Walgreen*, 846 F.3d at 881 ("We have no more authority to 'relax' the pleading standard established by Civil Rule 9(b) than we do to increase it."); *Kettering*, 816 F.3d at 413.

The "limited" application of the relaxed standard has only been allowed once in this Circuit: *Prather I*. In Prather I, the court urges that its relaxation of the stringent particularity standard should be "viewed in context": although Prather did not work directly in the billing department of the defendant entity, her job function was "reviewing final claims for submission";

she "deliver[ed] claims documents to the billing department" of the entity; and she received "confirmation that the final claims that she reviewed were submitted for payment." *Prather I* at 770; *Walgreen*, 846 F.3d at 881-82. The *Prather* relator—in this one limited occasion—was able to show personal knowledge that allegedly false claims were billed without directly submitting the claims themselves for billing.

The factual predicate of this case is inapposite to that in *Prather* I. Relator here does not work in the billing department of CCC (nor in the billing departments of Gem City, any other Envision Health agency, or any Ascension-affiliated agency). She does not aver she reviewed claims for submission, delivered claims to the billing department or that she has specific personal knowledge of the billing practices of CCC, Gem City, or any other agency. Instead, Relator, a Quality Assurance nurse, reviews Plans of Care and OASIS forms before their submission to a clinician, who is then charged with signing off on the Plan of Care. Amended Complaint at ¶ 34. Relator alleges that information set forth on the Plans of Care that she reviews, in conjunction with other data sources such as the OASIS form, goes toward the creation of a Requested Anticipated Payment ("RAP") form. *Id*. It is this RAP form that Relator alleges "serves as the basis" for claims submitted to the government health care payors. *Id*. Relator does not set forth facts asserting that she sees the RAP, that she signs off on the RAP, or that she knows the data that is actually set forth on the RAP or the billed claim. Nor, as discussed above, does Relator identify the dates of the applicable episode of care, the dates of the RAP or final payment, or identify the amount requested for final payment. *Cf. Prather I* at 769-70. Relator is simply too far removed from the billing function at CCC to adequately plead knowledge of the billed claims. These allegations must be dismissed.

**B.    Relator Fails to Adequately Plead That Any Allegedly False Statements Were Material To The Government's Payment Of The Claims.**

The fourth and final element of a well-plead FCA violation is that the allegedly false statement or record is "material to the Government's decision to make the payment sought in the defendant's claim." *Kettering*, 816 F.3d at 408, citing *SNAPP*, 618 F.3d at 505. The materiality standard in an FCA case is "demanding." *United States ex rel. Prather v. Brookdale Senior Living Cmtys., Inc.*, 892 F.3d 822, 831 (6th Cir. 2018) ("Prather II") (citing *Universal Health Svcs. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2003 (2016)). Setting aside the argument of whether the Defendants' alleged actions would be deemed material under *Escobar*, it must be determined whether Relator has sufficiently alleged this final element of a FCA violation; it is clear that she did not.

Throughout the Amended Complaint, Relator refers vaguely to "CMS guidance" that dictates the contents of OASIS data and the Plan of Care. Amended Complaint at ¶¶ 25, 26. She avers that Fazzi violates "federal regulations" when it codes OASIS data based upon a patient's medical history, but fails to point to even a single regulation that supports that contention. *Id*. at ¶ 36. At no point does she identify any regulation or agreement with the government that Defendants violate, relying instead on the conclusory statement that "the truthfulness and accuracy of all data in the OASIS form is material to the government's decision to pay for home health services." *Id*. at ¶ 27; c*f. Prather II*, 892 F.3d at 832 (relator points to specific timing and certification regulations that are allegedly material to the government's determination to pay claims). Relator's statements are simply "inferences or implications" that *every single response* on an OASIS data form is directly related to the government's determination to pay a claim; hardly the "stringent" standard required to allege that the allegedly falsified components of an OASIS form were "material to the Government's decision" to pay a claim.

**C.     Relator Fails to Plead a Cognizable False Claims Act Violation Related to Star Ratings.**

Relator expends significant real estate in her Amended Complaint on the idea that an increase in Defendants' Star Ratings—a Medicare system for measuring quality targeted to patients— is somehow causally linked to a false claim. Amended Complaint at ¶ 46. Star Ratings are quality measures created by the Centers for Medicare and Medicaid Services ("CMS") "to assist consumers when choosing a home health care provider", and are not incorporated into the coding, billing, or reimbursement of a claim submitted to the government. *Id.* at ¶ 47. Home Health agencies are eligible to be measured across two Star Ratings metrics: Quality of Patient Care (those measures that are related to OASIS assessments and Medicare claims data) and Patient Survey (a measure of patient care experiences). [2] Relator does not set forth any facts showing that Star Ratings scores, even those related to OASIS assessment data, are linked in any way to reimbursement for home health services. Nor does she specifically allege that the Defendants' Star Ratings impacted any claim submitted to the government for payment, or the amount of the claim that the government paid. Regardless, Relator inexplicably has come to the conclusion that an agency's increased Star Ratings score must have "cause[d] government healthcare programs to reimburse the Defendant at higher amounts than is medically necessary or justified." *Id.* at ¶ 46.

Moreover, Relator patently fails to set forth even the basic elements of a FCA violation in this context. She must, at the very least, allege: "[1] that the defendant [made] a false statement or create[d] a false record [2] with actual knowledge, deliberate ignorance, or reckless disregard of the truth or falsity of the information; [3] that the defendant . . . submitted a claim for payment to the federal government; . . . and [4] that the false statement or record [was] material to the Government's decision to make the payment sought in the defendant's claim." *Kettering*, 816

---

[2] Star Ratings are a tool incorporated into CMS's "Home Health Compare" tool, intended to aid consumers in choosing health care providers. *See* https://www.cms.gov/Medicare/Quality-Initiatives-Patient-Assessment-Instruments/HomeHealthQualityInits/HHQIHomeHealthStarRatings.html.

F.3d at 408. No specific false claims are identified, nor are any allegations of materiality or knowledge made in connection with Relator's Star Ratings allegations. Accordingly, all allegations related to Star Ratings in the Amended Complaint should be dismissed.

### D. Relator Fails to Adequately Plead a False Claims Act Violation Related to Her Allegations of Improperly Provided Physical Therapy Services.

After her claims related to Plans of Care, Relator tacks on a minimally-plead allegation that she "believes" CCC allows a non-clinically licensed patient scheduler to perform therapy services, or that CCC is not providing such therapy services at all. Amended Complaint, ¶¶ 63-65. A well-pleaded complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008). Without question, Relator has not adequately plead facts sufficient to give Defendants "fair notice" of her claims related to allegedly improperly provided physical therapy services, nor the grounds upon which her allegations rest.

Relator, in three conclusory paragraphs, alleges that she "believes" CCC allows a non-clinically licensed patient scheduler to perform therapy services, or, alternatively, that CCC is not providing such therapy services at all. Amended Complaint, ¶¶ 63-65. Relator's sole evidence of this alleged scheme is that she has "observed patient files that … indicate that reassessments have been performed by Danielle Reynolds", a patient scheduler. Relator does not allege how the patient charts indicate that a patient scheduler performed a reassessment, nor does she provide any sample claim or patient record that shows Defendants submitted a claim for payment to the federal government for a physical therapy reassessment performed by the patient scheduler. These fatally flawed allegations give further evidence of her failure to meet the stringent particularity standard, as she does not provide a single claim representative of this activity, nor does she sufficiently allege that such services were actually billed to a government

14

payor. As with the prior allegations, Relator does not demonstrate that she has the personal knowledge necessary to "support a strong inference—rather than simply a possibility—that a false claim was presented to the government." *Chesbrough*, 655 F.3d at 472; *Kettering*, 816 F.3d at 414. Given this, these allegations must be dismissed in their entirety.

### III.     Relator Fails to Adequately Plead a Reverse False Claims Action.

Count Two of Relator's Amended Complaint fails to sufficiently allege that Defendants engaged in a "reverse" False Claims Act violation. Section 3729(a)(1)(G) of the FCA prohibits the knowing avoidance of an obligation to pay money to the United States; that is, if a defendant knows he has received an improper payment from a government payor, he is obligated to return it. *United States ex rel. Prather v. Brookdale Senior Living Cmtys., Inc.*, 2015 U.S. Dist. LEXIS 150468, at *4 (M.D. Tenn. Nov. 5, 2015) (*rev'd on other grounds*).

A Relator must plead two essential elements to adequately allege a False Claims Act violation: facts that show defendants: (1) "received overpayments from the government" and (2) "failed to refund those payments." *Ibanez*, 874 F.3d at 916-17 (finding that relators failed to plead a reverse FCA violation when they "[did] not plead facts that show defendants received overpayment, much less that they retained it.")(citing 31 U.S.C. § 3729(a)(1)(G); *see also Prather I*, 838 F.3d at 774). Alternatively, a reverse FCA "violation is made out if the relator pleads adequate 'proof that the defendant made a false record or statement at a time that the defendant owed to the government an obligation'—a duty to pay money or property." Ibanez, 874 F.3d at 916 (quoting *Chesbrough*, 655 F.3d at 473).

Relator asks the court to make the "unwarranted inference" that, because she has seen notations on Plans of Care that she has deemed to be incorrect, an overpayment must have been made, and that Defendants knowingly failed to return such an overpayment. *Twombly*, 550 U.S. at 556. Relator does not allege facts that show Defendants received overpayments resulting from

allegedly inflated OASIS data, nor does she allege facts that show Defendants failed to refund any overpayments. *See generally* Amended Complaint. She merely makes a recitation of conclusory statements that do not even amount to "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

Simply put, Relator does not satisfy the required plausibility sufficient to satisfy a reverse False Claims Act action. Based on her own allegations, a reverse FCA violation is not even "conceivable"; much less sufficiently plausible. Therefore, Count II of the Amended Complaint should be dismissed.

## IV.   **Count III Fails to Adequately Plead A Conspiracy Among the Defendants**

In Count III of the Complaint, Relator asserts a cause of action for FCA conspiracy against all of the Defendants. To sustain a cause of action for conspiracy under the FCA, a relator must plead "facts showing that there was a plan or agreement 'to commit a violation of' one or more of the FCA subsections." *Ibanez*, 874 F.3d at 917. Specifically, a relator must allege: "(1) that there was a single plan to get a false claim paid, (2) that the alleged coconspirators shared in the general conspiratorial objective to get a false claim paid, and (3) that one or more conspirators performed an overt act in furtherance of the conspiracy." *United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 2015 U.S. Dist. LEXIS 39394, at *30-31 (S.D. Ohio Mar. 27, 2015)(quoting *United States ex rel. Antoon v. Cleveland Clinic Found.*, 978 F. Supp. 2d 880, 897-98 (S.D. Ohio 2013)).

Besides its formulaic recitation of the elements of an FCA conspiracy claim, Amended Complaint at ¶¶ 81-84, the Amended Complaint describes no particularized facts relating to a conspiracy: it does not describe an agreement or meeting of the minds between the various Defendants to defraud the government; nor does it allude to any circumstances from which a conspiratorial design could be reasonably inferred. *Ibanez*, 874 F.3d at 917 ("it is not enough for

16

relators to show there was an agreement that made it *likely* there would be a violation of the FCA; they must show an agreement was made *in order to* violate the FCA.") (emphasis in original). Additionally, the Amended Complaint does not refer to any overt act taken by the Defendants to perpetrate a conspiracy. Along with failing to establish scienter in the alleged scheme, the Amended Complaint clearly lacks grounds for the sort of specific intent that is prerequisite to a conspiracy claim. Due to these pleading deficiencies, Relator's conspiracy claim fails as a matter of law and must be dismissed under Rule 12(b)(6). *See Twombly*, 550 U.S. at 556-57 ("Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality.")

### V. Relator's Indiana State False Claims Act Claims Are Held to the Same Heightened Pleading Standard As Claims Under the Federal False Claims Act and Also Fail to Plead Fraud With Particularity or Plausibility.

Relator asserts the same claims under the Indiana Medicaid False Claims and Whistleblower Protection Act, I.C. 5-11-5.7 *et seq*., as she does under the federal False Claims Act (Amended Complaint ¶¶ 85-90), but fails to provide even the bare minimum of facts to support her allegations. Consequently, Relator's Indiana FCA claims should be dismissed for failure to plead fraud with particularity.

Indiana FCA claims are held to the same heightened pleading standard as Federal False Claims Act claims. The Indiana FCA "mirrors the Federal FCA in all material respects"; as such, an analysis of the federal law is "equally applicable to [the Relator's] Indiana FCA claims". *United States v. Sleep Ctrs. Fort Wayne, LLC*, 2016 U.S. Dist. LEXIS 46257, *2 n.1 (N.D. Ind. Apr. 6, 2016) (quoting *United States ex rel. Herron v. Indianapolis Neurosurgical Grp., Inc*., 2013 U.S. Dist. LEXIS 23610, *7 (S.D. Ind. Feb. 21, 2013)). As the FCA and the Indiana FCA are both "anti-fraud statutes", Relator's "claims are subject to the heightened pleading

17

requirements of Federal Rule of Civil Procedure 9(b)." *Indianapolis Neurosurgical Grp.*, 2013 U.S. Dist. LEXIS 23610, at *7 (quoting *United States ex rel. Gross v. Aids Research Alliance-Chicago*, 415 F.3d 601, 604 (7th Cir. 2005)).

Under the Federal FCA, the Sixth Circuit Court of Appeals requires that a Relator alleges specific false claims reimbursed by government payors. *See supra* Section II.A. Relator does not plead any facts related to a single sample claim that was submitted to or reimbursed by Indiana Medicaid, but instead repeats the same conclusory allegations that appear throughout the Amended Complaint.[3] Amended Complaint at ¶¶ 85-90. It becomes even more patently clear that Relator does not have knowledge of Indiana claims, as she admits she has only worked at CCC, which—as she admits—serves Cincinnati, Ohio area patients. *Id*. at ¶¶ 6, 8.

Since the Relator's claims should be dismissed for failure to plead fraud with particularly and plausibility for the reasons set forth in Sections I and II of this Argument, Relator's Indiana FCA claims similarly should be dismissed.

## VI.    Ascension Should Be Dismissed From This Action With Prejudice.

In a misguided attempt to broaden her Complaint, Relator named Ascension Health as a defendant, irrespective of Ascension's actual role in the alleged scheme or relationship with the other defendants. The sole factual allegation set forth in the Amended Complaint related to Ascension is that Ascension and Envision entered into a joint venture agreement in September 2014 for the provision of home health care services. Amended Complaint at ¶ 35. Relator does not allege that Ascension is involved in the ownership, operation, or management of CCC or Gem City, the only two agencies at issue in the Amended Complaint. Nor does Relator attempt

---

[3] Relator alleges that Gem City operated in the Indianapolis, Indiana area; however, Relator's pleadings contain only one paragraph related to one patient served by Gem City, which she does not allege resulted in claims presented to or paid by Indiana Medicaid. Amended Complaint at ¶ 67. Relator does not allege that CCC delivered any services to patients in Indiana.

even to describe a single false claim generated by Ascension, which belies the fact that Relator has absolutely no knowledge of the coding and billing activities of Ascension.

Even if Relator had successfully plead a claim, and she has not, Ascension should be dismissed from this action with prejudice. Ascension Health is not a parent, sibling, or affiliate entity of CCC or Gem City, the only entities about which Relator has plead any personal knowledge. *See* Exhibit A, Declaration of Christine McCoy at ¶¶ 5-7. [4]  Indeed, Relator specifically alleges that the activities set forth in her Amended Complaint were made by and through CCC and Gem City, and not any other home health agencies related to Envision or Ascension. Amended Complaint at ¶ 1. As Ascension is wholly unrelated to CCC or Gem City, and to the activities described in the Complaint, Defendants request dismissal with prejudice for all allegations against Ascension.

---

[4] Although Defendants refer to and attach the Declaration of Christine McCoy (Exh. 1, McCoy Decl.), disposition under Rule 12(b)(6) is still appropriate even if the Court considers the Declaration. On a motion to dismiss for failure to state a claim upon which relief can be granted, matters outside the pleadings may be presented and considered by the Court. *See* Wright & Miller, Federal Practice & Procedure: Civil 3d § 1366. The information contained in the Declaration is referenced and relied upon by Relator in the Amended Complaint, and accordingly may be considered by the Court without converting the motion to dismiss to one for summary judgment. *Dials v. Watts Bros. Moving & Storage Sys.*, 2003 U.S. Dist. LEXIS 21413, at *7 (S.D. Ohio Nov. 24, 2003) ("[W]here materials are central to the claims asserted, a defendant may introduce these materials if the plaintiff fails to do so.") Alternatively, if the Court in its discretion deems the Declaration properly considered as part of a motion for summary judgment, Defendants request that this motion be treated as a motion for summary judgment under Rule 56 only with respect to Ascension. Fed. R. Civ. P. 12(d); *see also Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010) (affirming conversion of a motion to dismiss to motion for summary judgment). There can be no genuine dispute that Ascension is wholly unrelated to CCC or Gem City and Relator has plead nothing to the contrary.

## <u>CONCLUSION</u>

It is respectfully submitted that all claims alleged by Relator should be dismissed with prejudice pursuant to Fed. R. Civ P. 12(b)(6) for failure to state a claim upon which relief can be granted.

Dated: Cincinnati, Ohio
       September 10, 2018


/s/ Allison L. Goico
_____
Allison L. Goico, Esq. (OH 0088777)
Jason W. Hilliard (0082688)
DINSMORE & SHOHL LLP
255 East Fifth Street, Suite 1900
Cincinnati, Ohio 45202
Phone: (513) 977-8426
Fax: (513) 977-8141
*allison.goico@dinsmore.com*
*jason.hilliard@dinsmore.com*
*Attorneys for Defendants Envision Healthcare, Care Connection of Cincinnati, Gem City Home Care, and Ascension Health*


/s/ George B. Breen
_____
George B. Breen (*application for admission pro hac vice forthcoming*)
Erica F. Sibley (*application for admission pro hac vice forthcoming*)
Epstein Becker & Green, P.C.
1227 25th St NW, Suite 700
Washington, D.C. 20037
Tel: (202) 861-0900
Fax: (202) 861-3523
*gbreen@ebglaw.com*
*esibley@ebglaw.com*

*Attorneys for Defendants Envision Healthcare, Care Connection of Cincinnati, Gem City Home Care, and Ascension Health*

20

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 10th day of September, 2018, I electronically transmitted the attached document using the CM/ECF system for filing, which will be sent electronically to all registered participants as identified on the Notice of Electronic Filing.

/s/ Jason W. Hilliard