**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA;** ) | |
| **STATE OF INDIANA;** ) | |
| *ex rel.* **CATHY OWSLEY,** ) | |
| ) | **Case No. 1:15-cv-00511** |
| **Plaintiffs,** ) | |
| ) | **Judge Timothy S. Black** |
| **vs.** ) | |
| ) | **Magistrate Judge Stephanie K. Bowman** |
| **FAZZI ASSOCIATES, INC.;** ) | |
| **CARE CONNECTION OF CINCINNATI;** ) | **ORAL ARGUMENT REQUESTED** |
| **GEM CITY HOME CARE;** ) | |
| **ASCENSION HEALTH CARE; and** ) | |
| **ENVISION HEALTHCARE HOLDINGS,** ) | |
| **INC.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**DEFENDANT FAZZI ASSOCIATES, INC.'S MOTION TO DISMISS**
**RELATOR'S AMENDED COMPLAINT**

Defendant Fazzi Associates, Inc. ("Fazzi"), by and through undersigned counsel, hereby moves to dismiss Relator Cathy Owsley's ("Owsley" and/or "Relator") Amended Complaint with prejudice. As set forth more fully in Fazzi's memorandum in support of this motion, the Amended Complaint should be dismissed for failure to state a claim upon which relief can be granted, and for failure to plead fraud with the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure. Accordingly, Fazzi respectfully requests that this Court dismiss all of Relator's claims against Fazzi with prejudice. Moreover, because of the numerous Defendants and the complexity of the regulatory scheme at issue, Fazzi requests oral argument on this motion to assist the Court in its decision-making.

Respectfully submitted,

*/s/  John P. Bueker*
John P. Bueker
Kathryn E. Caldwell
(*Admitted Pro Hac Vice 08/28/18*)
**ROPES & GRAY LLP**
800 Boylston St.
Boston, Massachusetts  02199-3600
Phone: (617) 951-7000
Email:  john.bueker@ropesgray.com
          kathryn.caldwell@ropesgray.com

-and-

Marc J. Kessler  (0059236)
**HAHN LOESER & PARKS LLP**
65 E. State St., Ste. 1400
Columbus, Ohio  43215
Phone: (614) 233-5168
Email:  mkessler@hahnlaw.com

*Counsel for Fazzi Associates, Inc.*

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ...................................................................................................................... 2

I.   REGULATORY SCHEME ............................................................................................. 2

II.  FACTUAL BACKGROUND .......................................................................................... 4

III. RELATOR'S ALLEGATIONS ...................................................................................... 5

IV.  PROCEDURAL HISTORY ........................................................................................... 7

ARGUMENT .......................................................................................................................... 8

I.   RELATOR FAILS TO PLEAD THAT FAZZI VIOLATED SECTIONS
     3729(A)(1)(A)-(B) OF THE FCA AND PARALLEL INDIANA STATE
     STATUTES. ................................................................................................................. 9

   A.  The Amended Complaint Does Not Adequately Plead Any False Claims...................... 10

       1.  Relator Fails Adequately to Allege Any Representative False Claim. ......................... 10

       2.  Relator Fails to Allege Personal Knowledge Sufficient to Support an Inference
           that a False Claim Was Submitted. ................................................................. 13

   B.  Relator Fails to Plead that Fazzi Submitted or Caused to Be Submitted Any False
       Claim under Section 3729(a)(1)(A). ................................................................... 15

   C.  Nor Does Relator Adequately Plead that Fazzi Made, Used, or Caused Any HHA
       to Make or Use a False Record that Was Material to Government Payment under
       Section 3729(a)(1)(B). ................................................................................... 17

   D.  Relator Has Not Established the Required Scienter Element. ..................................... 18

II.  RELATOR PLEADS NO "REVERSE" FALSE CLAIMS ACT VIOLATION
     AGAINST FAZZI. ....................................................................................................... 19

III. RELATOR'S COMPLAINT FAILS TO STATE A CLAIM FOR ANY FCA
     CONSPIRACY........................................................................................................... 19

CONCLUSION ...................................................................................................................... 20

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Textile Mfrs. Inst., Inc. v. The Ltd., Inc.*,
190 F.3d 729 (6th Cir. 1999) ...................................................19

*United States ex rel. Antoon v. Cleveland Clinic Found.*,
978 F. Supp. 2d 880 (S.D. Ohio 2013) ...................................................4

*Apex Energy Grp., LLC v. Apex Energy Sols. of Cincinnati, LLC*,
No. 1:12cv466, 2013 WL 394464 (S.D. Ohio Jan. 31, 2013) ...................................................4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................8

*United States ex rel. Atkins v. McInteer*,
470 F.3d 1350 (11th Cir. 2006) ...................................................13, 14

*United States ex rel. Augustine v. Century Health Servs., Inc.*,
136 F. Supp. 2d 876 (M.D. Tenn. 2000) ...................................................18

*United States ex rel. Banton v. UT Med. Grp., Inc.*,
No. 03-cv-2740-JPM-dkv, 2010 WL 11493942 (W.D. Tenn. Jan. 27, 2010) ...................................................16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................8

*United States ex rel. Bennett v. Medtronic, Inc.*,
747 F. Supp. 2d 745 (S.D. Tex. 2010) ...................................................12

*United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*,
501 F.3d 493 (6th Cir. 2007) ...................................................8, 10, 14

*Chesbrough v. VPA, P.C.*,
655 F.3d 461 (6th Cir. 2011) ...................................................10, 19

*United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*,
290 F.3d 1301 (11th Cir. 2002) ...................................................10

*United States ex rel. Coots v. Reid Hosp. & Health Care Servs., Inc.*,
1:10-cv-0526, 2012 WL 3949532 (S.D. Ind. Sept. 10, 2012) ...................................................9

*United States ex rel. Harper v. Muskingum Watershed Conservancy Dist.*,
842 F.3d 430 (6th Cir. 2016) ...................................................8

*United States ex rel. Hockenberry v. OhioHealth Corp.*,
    2:15-CV-666, 2016 WL 4480350 (S.D. Ohio Aug. 25, 2016) .................................................8

*United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*,
    874 F.3d 905 (6th Cir. 2017) .............................................................11, 13, 19, 20

*United States ex rel. Lupo v. Quality Assurance Servs., Inc.*,
    242 F. Supp. 3d 1020 (S.D. Cal. 2017)....................................................................18

*United States ex rel. Marlar v. BWXT Y-12, LLC*,
    525 F.3d 439 (6th Cir. 2008) ...................................................................................11

*Mulbarger v. Royal All. Assocs., Inc.*,
    10 F. App'x 333 (6th Cir. 2001) ................................................................................8

*United States ex rel. Oughatiyan v. IPC The Hospitalist Co., Inc.*,
    09 C 5418, 2015 WL 718345 (N.D. Ill. Feb. 17, 2015)...........................................13

*United States ex rel. Prather v. Brookdale Senior Living Cmtys., Inc.*,
    838 F.3d 750 (6th Cir. 2016) .......................................................................8, 10, 13, 14

*United States ex rel. Prather v. Brookdale Senior Living Cmtys., Inc.*,
    892 F.3d 822 (6th Cir. 2018) ...................................................................................18

*Sanderson v. HCA-The Healthcare Co.*,
    447 F.3d 873 (6th Cir. 2006) ...........................................................................9, 10, 12

*United States ex rel. Sheldon v. Kettering Health Network*,
    816 F.3d 399 (6th Cir. 2016) .....................................................................................9

*United States ex rel. SNAPP, Inc. v. Ford Motor Co.*,
    532 F.3d 496 (6th Cir. 2008) .....................................................................................9

*United States ex rel. Tillson v. Lockheed Martin Energy Sys., Inc.*,
    5:00CV-39-M, Civ.A. 5:99CV-170-M, 2004 WL 2403114 (W.D. Ky. Sept.
    30, 2004) ...................................................................................................................16

*United States v. Estate of Rogers*,
    No. 1:97CV461, 2001 WL 818160 (E.D. Tenn. June 28, 2001) ............................18

*United States v. Kernan Hosp.*,
    880 F. Supp. 2d 676 (D. Md. 2012).....................................................................11, 12

*United States v. Murphy*,
    937 F.2d 1032 (6th Cir. 1991) .................................................................................16

**Statutes**

31 U.S.C. § 3729............................................................................................ *passim*

42 U.S.C. § 1395(f) ...........................................................................................5

Indiana Medicaid False Claims and Whistleblower Protection Act ............................1, 9

**Other Authorities**

42 C.F.R. § 409.43 ...........................................................................................14

42 C.F.R. § 424.22 ...........................................................................................2

42 C.F.R. § 484.205(b)(1)-(2) ...........................................................................4

45 C.F.R. § 162.1002(b)-(c) ..............................................................................3

CMS, "Category 4 – OASIS Data Set: Forms and Items," https://qtso.cms.gov/
    system/files/2018-03/CAT_4_04_15_FINAL.pdf ..........................................3, 14

CMS, "Home Health PPS," https://www.cms.gov/Medicare/Medicare-Fee-for-
    Service-Payment/HomeHealthPPS ............................................................4

CMS, OASIS-C2 Guidance Manual, Ch. 1 (2018),
    https://www.cms.gov/Medicare/Quality-Initiatives-Patient-Assessment-
    Instruments/HomeHealthQualityInits/Downloads/OASIS-C2-Guidance-
    Manual-Effective_1_1_18.pdf ...............................................................2, 3, 14

CMS, OASIS-C2 Guidance Manual, Ch. 3 (2018),
    https://www.cms.gov/Medicare/Quality-Initiatives-Patient-Assessment-
    Instruments/HomeHealthQualityInits/Downloads/OASIS-C2-Guidance-
    Manual-Effective_1_1_18.pdf ...............................................................3

Fed. R. Civ. P. 12(b)(6) ...............................................................................8, 11, 14, 19

Fed. R. Civ. P. 8(a) .......................................................................................2

Fed. R. Civ. P. 9(b) ................................................................................. *passim*

ICD-10-CM-Official Guidelines for Coding and Report FY 2019,
    https://www.cdc.gov/nchs/icd/data/10cmguidelines-FY2019-final.pdf ...................3

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

## PRELIMINARY STATEMENT

Defendant Fazzi Associates, Inc. ("Fazzi") offers coding services for home health care agencies, including the provision of coding recommendations to Defendants Care Connection of Cincinnati ("CCC") and Gem City Home Care ("Gem City").  Am. Compl. ¶¶ 7-10.  Relator Cathy Owsley, a CCC employee, brings this *qui tam* action under the federal False Claims Act ("FCA") and similar provisions of the Indiana Medicaid False Claims and Whistleblower Protection Act ("IFCWPA").  Though the regulatory scheme governing home health care payment is complex, the reasons for dismissing Relator's claims against Fazzi are straightforward: the Amended Complaint is completely devoid of any well-pleaded facts to support Relator's conclusory allegations that Fazzi violated the FCA or IFCWPA, or that it conspired with one or more of its co-defendants to violate the FCA.  Relator does not allege critical elements of the purported FCA violations, let alone plead them with the particularity required by Rule 9(b)'s heightened pleading standard.  Indeed, the Amended Complaint contains startlingly few specific allegations regarding the conduct of Fazzi and its employees at all.

*First*, Relator fails to allege any facts supporting critical elements of an FCA violation (Count I), or the corresponding elements of an Indiana statutory violation (Count IV).  Most importantly, Relator does not plead the most basic of requirements, a false claim.  But the deficiencies do not stop there, the Amended Complaint fails to allege any facts from which one can reasonably conclude that Fazzi submitted, or caused to be submitted, any claims at all.  Nor does Relator plead that Fazzi had the required scienter.

*Second*, the Amended Complaint wholly fails to state a claim under the FCA's "reverse" false claims provision, Section 3729(a)(1)(G).  Relator pleads no obligation that Fazzi owes or has ever owed to the government, which is fatal to Count II of the Amended Complaint.

*Third*, Relator's pleading does not state a claim for any violation of the FCA's conspiracy provision, Section 3729(a)(1)(C) (Count III). Critically, the Amended Complaint pleads no specific agreement between or among the defendants that was made *in order to defraud* the federal government. Relator Owsley attempts to plead conspiracy by innuendo and implication, which is simply insufficient to satisfy the pleading standards under Rules 8(a) and 9(b) of the Federal Rules of Civil Procedure.

Accordingly, Relator's Amended Complaint should be dismissed with prejudice.

## **BACKGROUND**

## I. **REGULATORY SCHEME**

Relator's Amended Complaint alleges that Fazzi somehow participated in a fraudulent scheme to submit false claims for payment for home health services that were billed to government payors by home health agency ("HHA") clients to which Fazzi provided coding services. Governmental healthcare programs, including Medicare and Medicaid, pay HHAs for certain home health care services for eligible patients on an episodic basis. 42 C.F.R. § 424.22; Am. Compl. ¶ 23. The government pays for home health care at an acuity-adjusted payment rate based on classifying patients into diagnostic groups at the outset of 60-day episodes of home health care. 42 C.F.R. § 424.22. A clinician employed by the HHA evaluates each patient using a standardized comprehensive assessment tool – the Outcome Assessment Information Set ("OASIS"). Centers for Medicare and Medicaid Services ("CMS"), OASIS-C2 Guidance Manual, Ch. 1 at 1-2 (2018) ("OASIS Manual"), https://www.cms.gov/Medicare/Quality-Initiatives-Patient-Assessment-Instruments/HomeHealthQualityInits/Downloads/OASIS-C2-Guidance-Manual-Effective_1_1_18.pdf; *see also* Am. Compl. ¶¶ 24-25. The HHA's clinician answers a set of questions ("M Items") designed to capture the patient's clinical and functional

status at the beginning of each episode,[1] and expected therapeutic needs.  OASIS Manual, Ch. 1 at 1-2; Am. Compl. ¶ 26.

CMS provides guidelines for coding, using as standards the International Classification of Diseases ("ICD").[2]  *See, e.g.*, ICD-10-CM-Official Guidelines for Coding and Report FY 2019 ("Coding Guidelines"), https://www.cdc.gov/nchs/icd/data/10cmguidelines-FY2019-final.pdf. Based on review of the patient's entire medical record plus the clinician's own patient assessment, the HHA's clinician identifies applicable ICD diagnostic codes to document a patient's primary diagnosis (*i.e.*, the one most related to the HHA's delivery of services) along with any secondary diagnoses (*i.e.*, additional conditions that affect the patient care's in terms of additional evaluation, treatment, and/or extended stays and increased monitoring).  *Id.*; *see also* OASIS Manual, Ch. 3 at C-10-11; *id.* at Home Health Patient Tracking Sheet.

CMS guidance makes clear that the evaluating clinician (and, ultimately, the HHA) bears final responsibility for ensuring the accuracy of OASIS data and diagnostic codes.  *See, e.g.*, OASIS Manual, Ch. 1 at 1-5 ("Only one clinician may take responsibility for accurately completing a comprehensive assessment , , , , [T]he assessing clinician is responsible for considering available input . . . and selecting the appropriate OASIS item response(s)[.]"); *id.* at App'x B (ensuring OASIS accuracy "is the responsibility of the [home health] agency").  *See also* CMS, "Category 4 – OASIS Data Set: Forms and Items," at Q36, https://qtso.cms.gov/ system/files/2018-03/CAT_4_04_15_FINAL.pdf ("OASIS Q&A") ("The HHA has the overall responsibility for providing services, assigning ICD-10-CM codes, and billing.").

---

[1] OASIS data are also assessed and collected at other times, including during the resumption of care following an inpatient facility stay, when the patient is transferred to an inpatient facility, and during discharge from home care. Am. Compl. ¶ 24; *see also* OASIS Manual, Ch. 1 at 1-2.

[2] Relator's allegations regarding Fazzi begin in or after December 2014.  *See* Am. Compl. ¶ 35.  CMS required use of the 9th Revision of the ICD until September 30, 2015; CMS mandated use of ICD-10 beginning on October 1, 2015.  45 C.F.R. § 162.1002(b)-(c).

The OASIS data are used to preliminarily assign the patient to one of 153 Home Health Resource Groups ("HHRG") that determines the HHA's payment based on the patient's condition and needs. Am. Compl. ¶ 27; *see also* CMS, "Home Health PPS," https://www.cms.gov/Medicare/Medicare-Fee-for-Service-Payment/HomeHealthPPS. Medicare pays for home health services in two stages: a partial prospective payment based upon the assignment of a preliminary HHRG and a final payment. The initial payment is made in response to the HHA's Request for Anticipated Payment ("RAP"), and the remainder is paid after the episode of care ends, when the HHA submits a final claim reflecting the therapies and services that were actually delivered to the patient. 42 C.F.R. § 484.205(b)(1)-(2).

## II.  FACTUAL BACKGROUND

Fazzi contracts with HHAs to review and provide recommendations relating to OASIS coding data, including M Item responses and applicable diagnostic codes, based on the OASIS Manual, Coding Guidelines, other CMS guidance, as well as information contained in a patient's medical record. *See* Am. Compl. ¶¶ 7, 35. The HHA's clinician then decides whether to accept and implement Fazzi's recommendations in the patient assessment before transmitting the OASIS data to CMS. *See* Am. Compl. ¶¶ 32, 57-59. Indeed, Fazzi makes its recommendations to the HHAs using a template form that provides explicitly: "Any changes to the diagnoses or assessment items are made solely at the discretion of the assessing clinician. Please review the diagnoses, symptom control ratings and documented OASIS changes within the record . . . and alter as deemed appropriate by the clinician." *See* Ex. A, Sample Fazzi Coding Template.[3] The

---

[3] This Court may properly consider Exhibit A because the Amended Complaint directly references and incorporates Fazzi's recommended coding changes repeatedly throughout. *See, e.g.*, Am. Compl. ¶¶ 36, 39. The template used by Fazzi to submit those recommended changes to HHA is integral to the complaint and no material dispute exists as to the template's relevance or authenticity. It may therefore be relied upon by this Court without converting the motion to dismiss to a motion for summary judgment. *See, e.g.*, *Apex Energy Grp., LLC v. Apex Energy Sols. of Cincinnati, LLC*, No. 1:12cv466, 2013 WL 394464, at *2 (S.D. Ohio Jan. 31, 2013); *United States ex rel. Antoon v. Cleveland Clinic Found.*, 978 F. Supp. 2d 880, 887 (S.D. Ohio 2013).

Amended Complaint does not allege that Fazzi has any knowledge of whether or not HHA clinicians accepted its coding recommendations in whole or in part.

The Defendant HHAs pay Fazzi for each patient assessment Fazzi reviews; Fazzi's compensation is not linked in any way to its coding recommendations or to the HHA's receipt of funds from government payors. The Amended Complaint contains no allegation that Fazzi had knowledge of or access to – let alone reviewed or altered – any government beneficiary's patient Plan of Care,[4] any RAP submitted by Defendant HHAs, the type or quantity of services and therapy provided to any patient, or any final claim for payment by the HHA to a government payor.

## III.    RELATOR'S ALLEGATIONS

Relator alleges she is employed by CCC as a Quality Assurance nurse. Am. Compl. ¶ 34. Beginning in or around December 2014, CCC outsourced portions of Relator's job to Fazzi. *See* Am. Compl. ¶¶ 34-35. Though Relator contends she is "the last set of eyes that reviews the Plans of Care," Am. Compl. ¶ 34, the Amended Complaint makes clear that others – including the assessing clinician and the patient's treating physician – have final discretion for approving patient assessments and Plans of Care, *see id*. ¶¶ 8, 32. What's more, Relator pleads no specific involvement in or responsibility for the creation of the RAP, the submission of the RAP to CMS, the delivery of services or therapy to government beneficiaries, or the HHA's submission of a final claim for payment to the government payor.

Relator's conclusory allegations suggest a scheme in which Defendants fraudulently "upcoded" patient M Items and diagnosis codes at the outset of patient care to "directly increase the reimbursement amount government healthcare programs pay to the Defendant home health

---

[4] The HHA clinician drafts, and the patient's treating physician reviews and approves, a plan of care at the outset of each episode. *See* Am. Compl. ¶ 32; 42 U.S.C. § 1395(f).

agencies." *Id.* ¶¶ 33, 38-39.  Even assuming Fazzi made all of the coding recommendations Relator describes in her "representative sample," and even assuming Fazzi's recommendations were incorrect, the fact remains that there are several steps *after* Fazzi's review of the patient assessment and *before* the HHA submits a claim for payment to CMS: (1) the HHA's clinician reviews Fazzi's recommendations and determines whether to accept them, *see id.* ¶¶ 57-59; (2) the HHA's clinician develops or updates a Plan of Care based on the patient's clinical diagnosis and observable characteristics, *id.* ¶ 32; (3) the patient's physician signs off on the Plan of Care, *see, e.g.*, *id.* ¶¶ 8, 32; (4) the HHA creates and submits to CMS a RAP, *id.* ¶ 34; (5) the HHA delivers services and therapies during the episode of care, *see id.* ¶ 28; and (6) then the HHA submits a final claim for payment to the government, which may adjust the payment upward or downward depending on the care actually provided, *id.*  Relator does not allege that Fazzi had any involvement in, or was even privy to information about, what occurred in *any* of these steps.

What's more, a number of Relator's allegations do not implicate Fazzi's conduct at all. For example, she contends that CCC fraudulently billed government healthcare programs for therapy services never provided.  Am. Compl. ¶¶ 63-65.  She also alleges that the HHAs delivered improper or unnecessary care to certain patients, and that Defendants generally "compromis[ed] patient safety."  *Id.* ¶¶ 3, 44-45.  But as Relator acknowledges, "Fazzi has no contact with any patients," and there is no allegation that Fazzi provides services or therapy.  *Id.* ¶ 35.  Thus, though framed as allegations regarding the conduct of all Defendants, it is clear from the face of the Amended Complaint that certain of Relator's allegations do not concern Fazzi.

Similarly, Relator alleges that "Defendants have devised a scheme to inflate its [*sic*] 'Star Ratings' score."  *Id.* ¶ 46.  But Relator's allegations with respect to Star Ratings do not connect to Fazzi: Fazzi is not an HHA and does not receive a Star Rating, and there is no allegation that

Fazzi recommended that any HHA falsify patient assessment data for the purpose of improving the HHA's Star Rating. *See id.* ¶¶ 46-62. All of the specific conduct alleged with respect to purportedly inflated Star Ratings – including allegations of mandatory employee training, instructions from supervisors, and incentive pay for Star Rating improvement – was conduct purportedly carried out by CCC. *See id.* At most, Relator rehashes the same "upcoding" allegations she advances elsewhere in the Complaint and conclusorily notes that "[i]nevitably, Fazzi's changes always result in a higher [Star Rating] score." *Id.* ¶ 53. Such a bald assertion is too thin a reed to support FCA liability for Fazzi.

Relator's Star Rating allegations miss the mark for another reason as well: they are completely disconnected from the submission of any alleged false claim to the government for payment. There is no allegation that the Star Rating impacted in any way any claim submitted to the government for payment, let alone that the government's decision to pay a claim or the amount of the claim that it paid was effected in any way by the allegedly inflated Star Ratings. For this very simple reason, these allegations lead nowhere.

## IV.    PROCEDURAL HISTORY

On August 4, 2015, Relator commenced this action by filing a sealed FCA complaint on behalf of the United States against Fazzi, CCC, Gem City, Ascension Health Care, and Envision Healthcare Holdings, Inc. (collectively, "Defendants"). After investigating the allegations, the government chose not to intervene on April 6, 2018, and this Court ordered Relator's complaint unsealed shortly thereafter, on April 11, 2018. ECF Nos. 22-23. Relator waited nearly three months to serve Fazzi, completing service on July 9, 2018 of a document labeled "Amended *Qui Tam* Complaint" bearing a "filed" date of March 7, 2017.[5]

---

[5] Fazzi responds to the Amended Complaint with which it was served. Because the Amended Complaint is not presently available on the public docket, no ECF citation can be made.

## ARGUMENT

To avoid dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted). A complaint's factual content must "raise a right to relief above the speculative level," allowing the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Iqbal*, 556 U.S. at 678 (plaintiff must establish "more than a sheer possibility that a defendant has acted unlawfully"). Thus, a pleading must cross "the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "[A] recitation of facts intimating the 'mere possibility of misconduct' will not suffice." *United States ex rel. Hockenberry v. OhioHealth Corp.*, 2:15-CV-666, 2016 WL 4480350, at *3 (S.D. Ohio Aug. 25, 2016) (quoting *Flex Homes, Inc. v. Ritz-Craft Corp. of Mich.*, 491 Fed. App'x 628, 632 (6th Cir. 2012)).

Conclusory factual allegations and legal conclusions masquerading as facts will not suffice to defeat a motion to dismiss. *United States ex rel. Harper v. Muskingum Watershed Conservancy Dist.*, 842 F.3d 430, 435 (6th Cir. 2016). "A court is *not* bound to accept either (1) unwarranted inferences, including allegedly inferable 'facts' or conclusions which contradict documentary evidence appended to, or referenced within, the plaintiff's complaint; or (2) alleged legal conclusions." *Mulbarger v. Royal All. Assocs., Inc.*, 10 F. App'x 333, 335 (6th Cir. 2001).

Rule 9(b) requires that a party allege "with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9 is intended "to provide defendants with a more specific form of notice as to the particulars of their alleged misconduct." *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 503 (6th Cir. 2007); *see also United States ex rel. Prather v. Brookdale Senior Living Cmtys., Inc.*, 838 F.3d 750, 771 (6th Cir. 2016) (noting

that particularity "alert[s] defendants to the precise misconduct with which they are charged and protect[s] defendants against spurious charges of immoral and fraudulent behavior" (citation omitted)). Relator must allege the "who, what, when, where, and how of the alleged fraud." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (citation omitted); *see also United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008) (stating relator must plead in sufficient detail "in terms of time, place and content, the nature of a defendant's fraudulent scheme, and the injury resulting from the fraud").

## I. RELATOR FAILS TO PLEAD THAT FAZZI VIOLATED SECTIONS 3729(A)(1)(A)-(B) OF THE FCA AND PARALLEL INDIANA STATE STATUTES.

To state a claim under the FCA, Relator must allege sufficient facts to demonstrate:

[1] that the defendant [made] a false statement or create[d] a false record [2] with actual knowledge, deliberate ignorance, or reckless disregard of the truth or falsity of the information; [3] that the defendant . . . submitted a claim for payment to the federal government; . . . and [4] that the false statement or record [was] material to the Government's decision to make the payment sought in the defendant's claim.

*United States ex rel. Sheldon v. Kettering Health Network*, 816 F.3d 399, 408 (6th Cir. 2016) (quotation omitted). Relator's Count I should be dismissed because the Amended Complaint fails to allege three required elements of an FCA claim: (1) the false claim; (2) that Fazzi submitted or caused to be submitted such a false claim under Section 3729(a)(1)(A), or made, used, or caused to be made or used a false record material to government payment under Section 3729(a)(1)(B); and (3) that Fazzi had the required scienter.

As Relator acknowledges, the IFCWPA "closely mirrors" the FCA. Am. Compl. ¶ 16. The statutes are nearly identical in scope, so Relator's Count IV under the IFCWPA is analyzed under the same standard applied to federal FCA claims. *See, e.g.*, *United States ex rel. Coots v. Reid Hosp. & Health Care Servs., Inc.*, 1:10-cv-0526, 2012 WL 3949532, at *1 n.1 (S.D. Ind.

Sept. 10, 2012). Accordingly, Relator's Count IV fails for all of the same reasons as Count I.[6]

### A.    The Amended Complaint Does Not Adequately Plead Any False Claims.

"[T]he fraudulent claim is 'the *sine qua non* of a False Claims Act violation.'" *Sanderson*, 447 F.3d at 878 (quoting *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1311 (11th Cir. 2002)); *see also Chesbrough v. VPA, P.C.*, 655 F.3d 461, 473 (6th Cir. 2011) (relator must "plead a connection between the alleged fraud and an actual claim made to the government"); *Bledsoe*, 501 F.3d at 504 ("[P]leading an actual false claim with particularity is an indispensable element of [an FCA claim under] Rule 9(b).").

Where a relator alleges a "complex and far-reaching scheme" in violation of the FCA (*i.e.*, one that involves the ongoing submission of allegedly false claims over a period of time), she can satisfy this requirement in either of two ways: (1) by identifying a representative false claim that was actually submitted to the government, *see Bledsoe*, 501 F.3d at 510; or (2) by alleging "specific personal knowledge that relates directly to billing practices" supporting a "strong inference that a [false] claim was submitted," *Prather*, 838 F.3d at 769 (citations and internal quotations omitted). Relator's Amended Complaint satisfies neither standard.

### 1.    *Relator Fails Adequately to Allege Any Representative False Claim.*

Relator's conclusory allegations do not meet the standard for alleging a representative false claim as outlined in *Bledsoe*. Relator's attempt to meet this standard is premised entirely on broad, conclusory allegations about improper coding in the OASIS forms for Patients A through H. *See* Am. Compl. ¶¶ 38(a)-(e), 45, 54, 67. However, Relator's allegation that Fazzi

---

[6] Relator's allegations with respect to the Indiana statute should be dismissed for the separate reason that the Amended Complaint contains zero allegations about any claim submitted to Indiana Medicaid. She is employed by CCC, which operates in Cincinnati, Ohio; there is no allegation that CCC delivered any services to patients in Indiana. *See* Am. Compl. ¶¶ 7-8. And though she alleges that Gem City had one location in Indianapolis, Indiana along with its Ohio location, *id.* ¶ 9, Relator pleads only one substantive paragraph of the Amended Complaint regarding Gem City, and it does not identify any false or fraudulent services that the HHA billed to Indiana Medicaid, *see id.* ¶ 67.

recommended changes to a patient's OASIS form says nothing about whether and how a false claim for federal funds was submitted. *See id.*

Under controlling Sixth Circuit precedent, the allegations identifying the representative claim must describe "each step" from a defendant's alleged conduct to the submission of the allegedly false claim in order to survive a motion to dismiss pursuant to Rule 12(b)(6). *United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905, 915 (6th Cir. 2017). In *Ibanez*, for example, relators' allegations of a complex scheme to illegally promote a drug were deemed insufficient to survive a motion to dismiss where they merely stated that some off-label prescriptions were paid for by government programs without identifying any representative claim that was *actually* submitted to the government for payment. *See id.* at 912, 915. Analogously here, Relator offers only the bare allegation that each of Patients A through E's care was "billed by Defendants to the United States." Am. Compl. ¶ 38. Such a general allegation is insufficient to comply with the Sixth Circuit's pleading standard for representative claims. *See also United States ex rel. Marlar v. BWXT Y-12, LLC*, 525 F.3d 439, 445 (6th Cir. 2008) (requiring "proof that the alleged false or fraudulent claim was 'presented' to the government").

In similar cases alleging "upcoding" schemes, courts have consistently required relators to plead more than what Ms. Owsley has done here. For example, one court dismissed an FCA claim where "[t]he Complaint allege[d] a complicated scheme in which the Government contend[ed] [defendant] sought to boost its case mix index in an effort to garner greater federal reimbursement, but utterly fail[ed] to link this scheme with any claims actually submitted." *See United States v. Kernan Hosp.*, 880 F. Supp. 2d 676, 686 (D. Md. 2012). There, as here, plaintiff relied on general allegations of a "scheme to increase government funding" and acts of "fraudulent upcoding," but was "silent as to the next step or link in the False Claims Act liability

mechanism—namely, that these fraudulent diagnoses made their way to cost reports submitted to the [government] and actually caused the [government] to pay [defendant] for services not rendered." *Id.* at 686-87. The parallels strongly suggest that this case merits the same outcome – dismissal.

Relator's attempt to plead a false claim for payment regarding Patients A through H also fails under Rule 9(b). Again, controlling Sixth Circuit precedent requires the putative examples to specify the "who, what, when, where, and how of the alleged fraud." *Sanderson*, 447 F.3d at 877. Every example lacks these crucial indicia of fraud. For each of Patients A through H, Relator fails to identify the Fazzi employee (or even the HHA clinician) involved (*who*); *what*, if any, specific OASIS coding was false or fraudulent as a result of Fazzi's recommendation; *when* the alleged conduct occurred or *when* a resulting claim for government payment (if any) was submitted to the government and in *what* amount; or whether and when the HHA received payment from the government. *See* Am. Compl. ¶¶ 38, 45, 54, 67. Indeed, identifying the patients allegedly involved only as Patients A though H leaves Fazzi (unfairly and without sufficient information) to guess who the patients allegedly involved even were.

Relator also provides no basis for her conclusory allegation that Fazzi's recommendation was made "[w]ithout any supporting documentation." *See id.* In one instance, Relator even fails to identify whether the patient was the beneficiary of any government payor. *See id.* ¶ 38(a) (regarding Patient A). And in a particularly egregious case, Relator pleads only that Fazzi recommended a change to certain M Item responses, but not that the changes were false, fraudulent, or unsupported by the patient's medical record. *Id.* ¶ 54 (regarding Patient G).

Courts have consistently dismissed "upcoding" cases on Rule 9(b) grounds when they were lacking the same kinds of allegations as are missing here. In *United States ex rel. Bennett*

*v. Medtronic, Inc.*, for example, the court dismissed relators' claim under Rule 9(b) when relators did not cite the particular dates and details of the alleged upcoding. 747 F. Supp. 2d 745, 782 (S.D. Tex. 2010). And the Eleventh Circuit has affirmed a Rule 9(b) dismissal based on similarly sparsely-pleaded upcoding allegations. *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1358-60 (11th Cir. 2006).[7] The same details are missing here, warranting dismissal.

### 2. *Relator Fails to Allege Personal Knowledge Sufficient to Support an Inference that a False Claim Was Submitted.*

Unable to plead facts sufficient to identify a representative false claim that was actually submitted to the government for payment, Relator tries to satisfy the personal knowledge standard set forth in *Prather*, 838 F.3d at 769. But again, her allegations fall well short of the mark. *Prather*'s personal knowledge exception is very narrow: the Sixth Circuit has only ever applied this exception in *Prather* itself, despite having theorized about its existence since as early as 2011. *See Ibanez*, 874 F.3d at 915.

In *Prather*, the relator was specifically employed to review medical treatment documentation allegedly submitted to Medicare. *Prather*, 838 F.3d at 757. In other words, she reviewed the allegedly false claims themselves. Here, by contrast, layers of review follow Fazzi's coding recommendations to CCC and Relator's involvement therewith. Specifically, any of Fazzi's recommended changes must be accepted by the clinician providing the home health care services before becoming final; the HHA's clinician has discretion as to whether to accept and implement those recommendations in the patient assessment and is then responsible for developing or updating the patient Plans of Care. *See* Am. Compl. ¶ 57 ("CCC instructs nurses

---

[7] Relator – a current CCC employee with allegedly extensive exposure to upcoding, *see* Am. Compl. ¶¶ 6, 34 – fails to allege the claim number, code billed, date received, date paid, and amount paid for *any* claim. All of these details were pleaded and required under Rule 9(b) for a claim brought by a defendant's *former* employee to survive in *United States ex rel. Oughatiyan v. IPC The Hospitalist Co., Inc.*, 09 C 5418, 2015 WL 718345, at *3 (N.D. Ill. Feb. 17, 2015).

who perform patient assessments to **accept and agree to any changes Fazzi makes** to the original answers to OASIS questions." (emphasis added)); *see also id.* ¶¶ 32 ("The admitting HHA nurse is responsible for developing a physician-approved Plan of Care based on the patient's clinical diagnosis and observable characteristics."), 58-59 (discussing clinician review of Fazzi recommendations); OASIS Manual, Ch. 1 at 1-5 (noting that the HHA *clinician* is ultimately responsible for assessment data); OASIS Q&A at Q36. Moreover, the patient's physician must approve and sign the patient Plan of Care. Am. Compl. ¶ 8; 42 C.F.R. § 409.43 (stating that the patient plan of care must be reviewed and signed by the physician). Accordingly, though Relator alleges that she is the "last set of eyes" at CCC to review the Plans of Care, the Amended Complaint and overarching regulatory scheme make clear that she does not retain ultimate responsibility for the content of patient assessments or Plans of Care, let alone have any insight into false claims being submitted to the government.

Relator's allegations fail for the very simple reason that she does not even claim any personal knowledge about "the next link in the FCA liability chain: showing that the defendants *actually submitted* reimbursement claims for the services [she] describes." *Atkins*, 470 F.3d at 1359. She alleges no personal involvement in the creation or submission of the RAP, the delivery of services or therapy throughout the patient's episode of care, or the submission by CCC of any final claim for government payment. *See generally* Am. Compl. ¶¶ 28-29.

\* \* \*

For all of the foregoing reasons, Relator has failed to meet the standards set forth in *Bledsoe* and *Prather* to allege the submission of any false claim for payment. Dismissal of all claims against Fazzi is therefore appropriate pursuant to Rule 12(b)(6). Moreover, without the requisite particularity, Fazzi is left (unfairly) to guess as to who at Fazzi engaged in what

allegedly fraudulent conduct, as to which patients, and when.  Thus, the Amended Complaint should also be dismissed because they fail to meet Rule 9(b)'s heightened pleading requirements.

> **B.** **Relator Fails to Plead that Fazzi Submitted or Caused to Be Submitted Any False Claim under Section 3729(a)(1)(A).**

Even if the Amended Complaint is deemed to adequately identity some false claim (which it does not), Relator fails to allege that Fazzi submitted, or caused to be submitted, any such claim.  *See* 31 U.S.C. § 3729(a)(1)(A).  To the contrary, her allegations make clear that Fazzi's coding responsibilities were far removed from the submission of any such claims.

*First*, Relator does not allege that Fazzi directly submits claims to any government payor. Instead, Relator contends that HHAs use Fazzi's recommendations on OASIS coding "to complete Plans of Care, which . . . become the basis of payment by government healthcare programs to [the HHAs]."  Am. Compl. ¶ 37; *see also id.* ¶¶ 26 (alleging "the OASIS data form the basis of the physician-ordered Plan of Care"), 34 ("CCC uses information on the OASIS forms and Plans of Care to generate a Requested Anticipated Payment ('RAP') form which serves as the basis for billings submitted to government healthcare programs.").  That Fazzi's coding recommendations form "the basis of" a claim is far too attenuated to constitute the *actual submission* of a claim.

The Amended Complaint makes clear that it is the HHA that finalizes the OASIS data (including final sign-off by the assessing clinician) and completes the Plan of Care, which is then reviewed and approved by the patient's treating physician.  *See id.* ¶¶ 8, 57-59; *see also* Ex. A. Fazzi simply makes recommendations to the HHA, which the HHA is free to accept or reject. And Relator does not contend that Fazzi submits any claim to the government, or receives any payment from any government payor.

*Second,* Relator fails to allege that Fazzi caused the submission of any false claim by one or more of the other Defendants. To adequately plead an FCA violation against a third party to a claim for government funds, Relator must show that Fazzi "cause[d] to be presented" a false claim. 31 U.S.C. § 3729(a)(1). Although the FCA contains no specific definition of that phrase, the Sixth Circuit has held that, when applied to a third party, this prong requires *more than* mere knowledge of the submission of claims and knowledge of the falsity of those claims. *See United States v. Murphy*, 937 F.2d 1032, 1038-39 (6th Cir. 1991).

Courts applying this standard have looked to whether a sufficient nexus exists between the defendant's conduct and the presentation of a false claim. *See, e.g.*, *United States ex rel. Banton v. UT Med. Grp., Inc.*, No. 03-cv-2740-JPM-dkv, 2010 WL 11493942, at *7 (W.D. Tenn. Jan. 27, 2010). The analysis centers on whether the defendant *both* had knowledge of the false claim and took "some sort of affirmative action" that caused or assisted the presentment of a false claim for payment. *Id.* The analysis thus turns on the specific allegations of a defendant's conduct. *See, e.g.*, *United States ex rel. Tillson v. Lockheed Martin Energy Sys., Inc.*, 5:00CV-39-M, Civ.A. 5:99CV-170-M, 2004 WL 2403114, at *32-33 (W.D. Ky. Sept. 30, 2004).

Relator's allegations fall well short of establishing the requisite nexus between Fazzi's conduct and the presentment of a false claim. As in *Tillson*, where the court dismissed claims because the complaint contained no allegations that defendant participated in any way in the claims submission process, *see id.* at *33, Relator does not allege that Fazzi participated in the submission of any claim. The only conduct of which Fazzi is accused is making coding recommendations, which are subsequently reviewed by the HHA and used to determine payment by a government healthcare program. More is required to establish the requisite causation.

In *Banton*, for example, the court found a sufficient nexus present when defendants not

only knew of the fraudulent scheme, but also took steps to guarantee its success by facilitating the transfer of funds used to carry out the scheme. *See* 2010 WL 11493942, at *8. The court found that affirmative action to be an "essential step" in the scheme that led to the submission of false claims. *See id.* By contrast, Relator has made no such allegations here. Fazzi's alleged conduct consists of making a recommendation regarding OASIS assessment and diagnostic coding that the HHA may accept or reject during the clinician's final verification and sign-off of the OASIS assessment and, ultimately, the creation of the Plan of Care and its approval by the patient's physician. That conduct is far too removed from the submission of any allegedly false claim to constitute an "affirmative action" that satisfies the causation element. Relator makes no allegations that Fazzi even knew whether HHAs accepted its recommendations, let alone that Fazzi influenced, or sought to influence, an HHA's decision to seek reimbursement from a government health insurance program. The clinician's subsequent and independent decision to approve or reject Fazzi's recommendations and an HHA's subsequent decision to present a claim breaks the causal chain.[8]

### C. Nor Does Relator Adequately Plead that Fazzi Made, Used, or Caused Any HHA to Make or Use a False Record that Was Material to Government Payment under Section 3729(a)(1)(B).

To make out a claim under Section 3729(a)(1)(B), Relator must plead that Fazzi made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim. 31 U.S.C. § 3729(a)(1)(B). The Amended Complaint does not allege that Fazzi directly created any final record or statement in support of any claim for government payment; indeed, the HHAs bore final responsibility for the contents of OASIS data, the RAP, and the final claim for payment. *See supra* at 3, 6. And since Relator does not allege that Fazzi submitted any

---

[8] To the extent that Relator alleges any Defendant HHA had a policy not to reject Fazzi's recommendations (and therefore to accept them wholesale), Relator fails to plead that Fazzi had any knowledge of, agreement to, or influence on that policy. *See, e.g.*, Am. Compl. ¶¶ 57-59.

records to the government or received any government payment, Relator has not pleaded that Fazzi "used" any false statement or record. As with the Section 3729(a)(1) claim, Relator fails to plead that Fazzi caused any Defendant HHA to make or use a false record or statement in support of a claim for government funds, as the causal link is broken by the intervening conduct of the HHAs who review and evaluate Fazzi's recommendations and prepare final patient OASIS records and Plans of Care without oversight or direction from Fazzi. *See supra* at 15-17; *see also United States ex rel. Lupo v. Quality Assurance Servs., Inc.*, 242 F. Supp. 3d 1020, 1025 n.2 (S.D. Cal. 2017) (interpreting the "causes to be" language in Sections 3729(a)(1)(A) and 3729(a)(1)(B) similarly).

### D. Relator Has Not Established the Required Scienter Element.

Relator has failed to sufficiently plead scienter, a required element of her FCA claim. *See United States ex rel. Prather v. Brookdale Senior Living Cmtys., Inc.*, 892 F.3d 822, 837 (6th Cir. 2018). There is no reasonable inference to be drawn from Relator's allegations that Fazzi had the required scienter to support an FCA violation. At most, Relator alleges a few isolated coding errors that do not rise to the level of knowing falsity. "Simple negligence and innocent mistakes do not meet the level of scienter required by the FCA." *United States v. Estate of Rogers*, No. 1:97CV461, 2001 WL 818160, at *3 (E.D. Tenn. June 28, 2001). Even "errors based upon flawed reasoning . . . are not false under the FCA." *United States ex rel. Augustine v. Century Health Servs., Inc.*, 136 F. Supp. 2d 876, 890 (M.D. Tenn. 2000).

As discussed above, Relator fails to allege a sufficiently close link between Fazzi's alleged conduct and the submission of any claim for payment. She does not allege that Fazzi had any control over, let alone knowledge of, whether the HHA accepted or rejected Fazzi's coding recommendations, or whether the recommendations were eventually submitted to a government payor. Moreover, there is no allegation that Fazzi receives any financial compensation linked to

18

its coding recommendations; indeed, Fazzi is paid a negotiated rate per each patient assessment irrespective of the patient's HHRG score or case-mix assignment. Accordingly, the Amended Complaint is insufficient to raise an inference that Fazzi possessed the required scienter to impose FCA liability.

## II. RELATOR PLEADS NO "REVERSE" FALSE CLAIMS ACT VIOLATION AGAINST FAZZI.

Relator alleges in Count II a "reverse" FCA violation under 31 U.S.C. § 3729(a)(1)(G). Am. Compl. ¶¶ 76-80. The reverse false claims provision requires "'proof that the defendant made a false record or statement at a time that the defendant owed to the government an obligation'—a duty to pay money or property." *Chesbrough*, 655 F.3d at 473 (quoting *Am. Textile Mfrs. Inst., Inc. v. The Ltd., Inc.*, 190 F.3d 729, 736 (6th Cir. 1999)). Relator identifies no "concrete obligation owed to the government by [Fazzi] at the time an allegedly false statement was made," so Count II necessarily fails under Rule 12(b)(6) as against Fazzi. *Id.*; *see also Ibanez*, 874 F.3d at 916-17.

## III. RELATOR'S COMPLAINT FAILS TO STATE A CLAIM FOR ANY FCA CONSPIRACY.

"[T]o adequately allege an FCA conspiracy, it is not enough for relators to show there was an agreement that made it *likely* there would be a violation of the FCA; they must show an agreement was made *in order to* violate the FCA." *Ibanez*, 874 F.3d at 917. Relator's Amended Complaint is entirely devoid of any alleged agreement between or among Fazzi and any other Defendant other than a general allegation that the Defendant HHAs agreed "to outsource all OASIS coding reviews to Fazzi." Am. Compl. ¶ 35; *see also id.* ¶¶ 66, 68. Even assuming as true Relator's allegation that CCC's policy was to require clinicians to "accept and agree to any changes Fazzi makes to the original answers to OASIS questions," *id.* ¶ 57, the Amended Complaint is entirely devoid of any allegation that Fazzi agreed to that policy, or was even aware

19

of the alleged policy. Relator simply cannot show Fazzi was party to any "plan to get false claims paid." *Ibanez*, 874 F.3d at 917.

Moreover, and as explained above, after Fazzi submits its coding recommendations to the HHA, the assessment returns to the HHA for review and acceptance by the clinician. *See supra* at 15-17. A series of events – including the creation of the Plan of Care and its approval by the patient's physician, the submission of the RAP, the delivery of services and therapies by the HHA, and the submission of the final claim by the provider at the end of the episode – occurs *after* Fazzi provides coding recommendations. *Id.* Relator makes no allegations that Fazzi has any involvement with, or even knowledge of, any of those steps, or that Fazzi agreed to any fraudulent scheme implicating those events. In short, "[t]he chain that connects [Fazzi's] alleged misconduct to the eventual submission of false claims to the government is an unusually attenuated one and [Relator] provide[s] no specific statement showing the plan was made in order to defraud the government." *Ibanez*, 874 F.3d at 917.

## CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed with prejudice.

Dated: September 10, 2018

*/s/  John P. Bueker*
John P. Bueker
Kathryn E. Caldwell
(*Admitted Pro Hac Vice 08/28/18*)
**ROPES & GRAY LLP**
800 Boylston St.
Boston, Massachusetts  02199-3600
Phone: (617) 951-7000
Email: john.bueker@ropesgray.com
         kathryn.caldwell@ropesgray.com

-and-

Marc J. Kessler  (0059236)
**HAHN LOESER & PARKS LLP**
65 E. State St., Ste. 1400
Columbus, Ohio  43215
Phone: (614) 233-5168
Email: mkessler@hahnlaw.com

*Counsel for Fazzi Associates, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 10th day of September, 2018, I electronically transmitted the attached document using the CM/ECF system for filing, which will be sent electronically to all registered participants as identified on the Notice of Electronic Filing.

*/s/  Kathryn E. Caldwell*