**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| Deborah S. Hunt<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: October 13, 2021

Ms. Erica Sibley Bahnsen
Mr. George Bradley Breen
Ms. Elizabeth Harris
Epstein, Becker & Green
1227 25th Street, N.W.
Suite 700
Washington, DC 20037

John P Bueker
Ropes & Gray
800 Boylston Street
Boston, MA 02199

Mr. Douglas H. Hallward-Driemeier
Ropes & Gray
2099 Pennsylvania Avenue, N.W.
Washington, DC 20009

Mr. Jason W Hilliard
Dinsmore & Shohl
255 E. Fifth Street, Suite 1900
Cincinnati, OH 45202

Mr. Warner D. Mendenhall
190 N. Union Street
Suite 102
Akron, OH 44304

> Re: Case No. 19-4240, *USA, et al v. Fazzi Associates, Inc., et al*
> Originating Case No. : 1:15-cv-00511

Dear Counsel,

The court today announced its decision in the above-styled case.

 Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

           Yours very truly,

           Deborah S. Hunt, Clerk

           Cathryn Lovely
           Deputy Clerk

cc: Mr. Richard W. Nagel

Enclosures

Mandate to issue.

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0242p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA, et al., ex rel. CATHY OWSLEY,

        *Relator-Appellant*,

    *v.*

FAZZI ASSOCIATES, INC.; CARE CONNECTION OF CINCINNATI; GEM CITY HOME CARE; ASCENSION HEALTH CARE; ENVISION HEALTHCARE HOLDINGS, INC.,

        *Defendants-Appellees*.

No. 19-4240

---

Appeal from the United States District Court for the Southern District of Ohio at Cincinnati.
No. 1:15-cv-00511—Timothy S. Black, District Judge.

Argued: November 17, 2020

Decided and Filed: October 13, 2021

Before: KETHLEDGE, DONALD, and LARSEN, Circuit Judges.

---

## COUNSEL

**ARGUED:** Warner Mendenhall, THE LAW OFFICES OF WARNER MENDENHALL, Akron, Ohio, for Appellant. Douglas H. Hallward-Driemeier, ROPES & GRAY LLP, Washington, D.C., for Appellee Fazzi Associates, Inc. George B. Breen, EPSTEIN BECKER & GREEN, P.C., Washington, D.C., for Appellees Care Connection of Cincinnati, Gem City Home Care, Ascension Home Care, and Envision Healthcare Holdings, Inc. **ON BRIEF:** Warner Mendenhall, THE LAW OFFICES OF WARNER MENDENHALL, Akron, Ohio, for Appellant. Douglas H. Hallward-Driemeier, ROPES & GRAY LLP, Washington, D.C., John P. Bueker, ROPES & GRAY LLP, Boston, Massachusetts, for Appellee Fazzi Associates, Inc. George B. Breen, Erica Sibley Bahnsen, Elizabeth A. Harris, EPSTEIN BECKER & GREEN, P.C., Washington, D.C., Jason W. Hilliard, DINSMORE & SHOHL LLP, Cincinnati, Ohio, for Appellees Care Connection of Cincinnati, Gem City Home Care, Ascension Home Care, and Envision Healthcare Holdings, Inc.

## OPINION

KETHLEDGE, Circuit Judge. Cathy Owsley—a nurse for defendant Care Connection, a company providing home-health care to Medicare patients—alleged in considerable detail that she observed, firsthand, documents showing that her employer had used fraudulent data from Fazzi Associates, Inc. to submit inflated claims for payment to the federal and Indiana state governments. She therefore sued both companies and some related entities under the False Claims Act and an Indiana statute. But Owsley's complaint provided few details that would allow the defendants to identify any specific claims—of the hundreds or likely thousands they presumably submitted—that she thinks were fraudulent. For that reason alone her complaint fell short of the requirements of Civil Rule 9(b). We therefore affirm the district court's dismissal of her claims.

I.

At the pleadings stage, we take Owsley's allegations as true. *See Norfolk Cnty. Ret. Sys. v. Cmty. Health Sys., Inc.*, 877 F.3d 687, 689 (6th Cir. 2017).

A.

Private home-healthcare agencies obtain payments from Medicare through a "prospective payment system." 42 U.S.C. § 1395fff(a); *United States ex rel. Prather v. Brookdale Senior Living Cmtys., Inc.*, 838 F.3d 750, 756 (6th Cir. 2016). These agencies provide "episodes" of care, for which Medicare normally pays in two installments: an initial payment "made in response to a request for anticipated payment (RAP)" and a "residual final payment." 42 C.F.R. § 484.205(b)(1), (g).

The amount of each payment depends in large part on the patient's condition: the more care the patient needs, the larger the Medicare payments. For that reason, at the outset of a patient's treatment, a clinician (usually a registered nurse) conducts a "comprehensive assessment" of the patient. *Id.* § 484.55(b). As part of that assessment, the clinician collects data for a form called the Outcome and Assessment Information Set (OASIS)—which is the Centers

for Medicare and Medicaid Services' standardized assessment of a patient's condition. *See id.* § 484.55(c)(8); 64 Fed. Reg. 3764, 3765 (Jan. 25, 1999). The OASIS form records many details about a patient, including his primary and other diagnoses and his ability to bathe and walk. *See* Ctrs. for Medicare & Medicaid Servs., OASIS-C1/ICD-10 Guidance Manual, ch. 3, at C-10, K-6, K-14 (2015). Those data ultimately take the form of codes enumerated by the Centers for Medicare and Medicaid Services (CMS). *See id.* ch. 1, at 8, ch. 3. The data on OASIS forms—and hence the codes—"must accurately reflect the patient's status at the time of assessment." 42 C.F.R. § 484.45(b).

A home-health agency uses the OASIS data to establish an "individualized plan of care" for the patient and to complete a request for anticipated payment. *See id*. § 484.60 (plan of care); Ctrs. for Medicare & Medicaid Servs., Medicare Claims Processing Manual, ch. 10, §§ 10.1.7, 10.1.10.3, 40.1 (2021) (use of OASIS data for RAP); 42 C.F.R. § 484.205(c) (same). At the end of an episode of care, the agency reassesses the patient's condition and updates his OASIS form. *See* 42 C.F.R. § 484.55(d)(1). The agency then uses the updated OASIS data to complete its claim for residual payment. *See* Claims Processing Manual, ch. 10, § 40.2.

B.

Cathy Owsley was a Quality Assurance Nurse at Care Connection of Cincinnati, a home-health agency. In that role she reviewed OASIS forms and used them to complete plans of care. In 2014, Envision Healthcare Holdings acquired Care Connection and outsourced its OASIS coding to Fazzi Associates. Soon Owsley noticed that "Fazzi coders were altering OASIS data by enhancing existing diagnosis codes and adding new codes that were not supported by any medical documentation." Am. Compl. ¶ 36.

Owsley reported these concerns to several of her supervisors at Envision and Care Connection, repeatedly providing examples of specific patients whose OASIS data Fazzi had fraudulently changed (or "upcoded"). None of those supervisors took any action in response. One told her "[i]t is what it is"; another replied, "if you don't agree with this you can leave and get another job." *Id.* ¶¶ 42, 55. Meanwhile, Care Connection instructed nurses who had personally assessed patients' conditions to "agree to any changes Fazzi makes to the original

answers to OASIS questions." *Id.* ¶ 57. Multiple nurses complained that Fazzi had inaccurately or fraudulently coded the condition of patients whom the nurses had assessed. *See id.* ¶¶ 57–59. But most nurses acquiesced. *Id.* ¶ 58.

According to Owsley, Fazzi fraudulently changed the coding on the OASIS forms for about half of Care Connection's patients. *Id.* ¶ 70. Owsley then used those forms to complete patient plans of care; others at Care Connection used those same forms to complete requests for anticipated payment, which Care Connection would submit to Medicare the morning after Owsley had completed the patient's plan of care. *Id.* ¶ 34.

Owsley also alleged that this scheme extended beyond Care Connection. Envision controlled "dozens of home health agencies across the United States"—including Gem City and Ascension—and had outsourced coding for each of those agencies to Fazzi. *Id.* ¶¶ 66, 68. Owsley once observed the same pattern of fraudulent upcoding at Gem City. A physician had noted that the patient did not suffer from diabetes, chronic obstructive pulmonary disease, or apnea. *Id.* ¶ 67. But Fazzi changed the patient's OASIS form to report that the patient had each of those ailments. *Id.*

C.

Owsley thereafter sued Fazzi, Envision, Care Connection, Gem City, and Ascension on behalf of the United States and the State of Indiana, asserting various claims under the False Claims Act, 31 U.S.C. § 3729(a)(1)(A), (B), (C), (G), and a similar statute in Indiana, *see* Ind. Code § 5-11-5.7-2. The United States declined to intervene in the case. The district court later dismissed all of Owsley's claims, reasoning that her amended complaint had not pled the alleged fraudulent scheme with the particularity required by Civil Rule 9(b). This appeal followed.

II.

The question presented is whether Owsley's allegations satisfied Rule 9(b). That rule requires a plaintiff "to state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b). "We review de novo a district court's dismissal of a complaint for failure to plead

with particularity under Rule 9(b)." *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 467 (6th Cir. 2011).

All of Owsley's claims under the False Claims Act (and the Indiana statute) rest on the premise that the defendants knowingly submitted or caused to be submitted "a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A); Ind. Code § 5-11-5.7-2(a)(1). The quoted language "attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the claim for payment." *United States ex rel. Sheldon v. Kettering Health Network*, 816 F.3d 399, 411 (6th Cir. 2016) (cleaned up). For that reason, our circuit has imposed a "clear and unequivocal requirement that a relator allege specific false claims when pleading a violation of" the Act. *Id.* (cleaned up). Thus, under Rule 9(b), "[t]he identification of at least one false claim with specificity is an indispensable element of a complaint that alleges a False Claims Act violation." *United States ex rel. Hirt v. Walgreen Co.*, 846 F.3d 879, 881 (6th Cir. 2017) (cleaned up). Rule 9(b) therefore "does not permit a False Claims Act plaintiff merely to describe a private scheme in detail but then to allege simply that claims requesting illegal payments must have been submitted." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (cleaned up).

That in substance is what Owsley has done here. Owsley's allegations describe, in detail, a fraudulent scheme: Fazzi fraudulently upcoded patient OASIS data, which Care Connection then used to submit inflated requests for anticipated payment to CMS. The defendants respond that Care Connection required a clinician—typically the nurse who performed the patient's assessment—to sign off on the final OASIS coding before that coding was used for a request for anticipated payment. But Envision and Care Connection told employees (including Owsley herself) to accept Fazzi's coding or leave the company. *See* Am. Compl. ¶ 55. And most nurses accepted "Fazzi's changes out of fear of losing their jobs." *Id.* ¶ 58. The idea that those same nurses nonetheless corrected all the fraudulent upcoding that Owsley allegedly observed is itself implausible.

But Owsley makes little effort in her complaint to "identify any specific claims" that Care Connection submitted pursuant to the scheme. *Sanderson*, 447 F.3d at 877. Owsley could have done that in one of two ways. The default rule is that a False Claims Act claimant must identify

No. 19-4240                *United States v. Fazzi Assocs., Inc., et al.*                Page 6

a "representative claim that was actually submitted to the government for payment." *United States ex rel. Ibanez v. Bristol-Meyers Squibb Co.*, 874 F.3d 905, 915 (6th Cir. 2017). Owsley did not do that here. Alternatively, a claimant "can otherwise allege facts—based on personal knowledge of billing practices—supporting a strong inference that *particular identified claims* were submitted to the government for payment." *Prather*, 838 F.3d at 771 (emphasis added).

Here, Owsley did allege "personal knowledge of billing practices" employed in the fraudulent scheme—namely, her knowledge of the OASIS codes that she says Fazzi fraudulently changed. *Id.*; Am. Compl. ¶ 70. But Owsley did not allege facts that identify any specific fraudulent claims. Her complaint instead describes several instances of upcoding from 2015:

> (a) A [Care Connection (CCC)] registered nurse evaluated Patient A and indicated on the OASIS form that this patient was being treated for a simple leg wound. However, Fazzi altered the diagnosis on the OASIS form to include uncontrolled diabetes, hypertension, diabetic neuropathy and morbid obesity. There was no medical documentation supporting these diagnoses.
>
> (b) A CCC registered nurse evaluated Patient B—a Medicare Advantage patient—and diagnosed her with a leg ulcer. Without any supporting documentation, Fazzi altered the diagnosis to include a malignant cancer of the larynx.
>
> (c) Another CCC Medicare patient—Patient C—is ambulatory and can self-inject insulin. Nevertheless, Fazzi altered the OASIS forms to indicate that she is non-ambulatory and cannot self-inject insulin.
>
> (d) Patient D, a CCC post-surgical patient on Medicare, utilizes the assistance of a hand-held walker. Fazzi upcoded her diagnosis to paraplegia.
>
> (e) Another CCC patient on Medicaid—Patient E—was treated for a skin lesion, but the diagnosis was fraudulently upcoded to non-ambulatory and diabetic.

Am. Compl. ¶ 38.

This information does not amount to an allegation of "particular identified claims" submitted pursuant to the fraudulent scheme. *Prather*, 838 F.3d at 771. Owsley identifies neither the dates on which she reviewed the OASIS forms for these patients, nor the dates of any related claims for payment, nor the amounts of any of those claims. *Compare id.* at 769-70. That is not to say that our precedents require a plaintiff in one case to allege all the facts found sufficient in another; the facts of a particular case should not be mistaken for its rule. Instead,

No. 19-4240 *United States v. Fazzi Assocs., Inc., et al.* Page 7

the touchstone is whether the complaint provides the defendant with notice of a specific representative claim that the plaintiff thinks was fraudulent. *See Sanderson*, 447 F.3d at 877; *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003). And the diagnostic information in Owsley's complaint is simply not enough for Care Connection, Fazzi, or Envision reasonably to pluck out—from all the other claims they submitted—the five that Owsley was alluding to here. Her complaint therefore did not satisfy Civil Rule 9(b) as to those defendants.

B.

The district court was also correct to dismiss Owsley's claims against Gem City and Ascension. Owsley worked only at Care Connection, *see* Am. Compl. ¶¶ 6, 34, and did not allege that she regularly reviewed the OASIS forms of other defendant home-health agencies. She therefore lacked personal knowledge about the billing practices of those defendants.

Finally, the district court did not abuse its discretion when it denied Owsley leave to amend her complaint a second time. Owsley neither moved formally to amend nor proffered a proposed amended complaint. *See Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 214 F.3d 776, 783-84 (6th Cir. 2000).

\* \* \*

The district court's judgment is affirmed.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 19-4240

UNITED STATES OF AMERICA, et al., ex rel. CATHY OWSLEY,

    Relator - Appellant,

    v.

FAZZI ASSOCIATES, INC.; CARE CONNECTION OF CINCINNATI; GEM CITY HOME CARE; ASCENSION HEALTH CARE; ENVISION HEALTHCARE HOLDINGS, INC.,

    Defendants - Appellees.

**FILED**
Oct 13, 2021
DEBORAH S. HUNT, Clerk

Before:  KETHLEDGE, DONALD, and LARSEN, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

Deborah S. Hunt, Clerk